KYSOR INDUSTRIAL CORPORATION *v.* D. M. LIQUIDATING COMPANY.

INTERVENTION OF McCOBB & HEANEY.

1. ATTORNEY AND CLIENT—WORDS AND PHRASES—RETAINING LIEN.

An attorney's retaining lien is the right of an attorney to retain possession of all documents, money, or other property of his client coming into his hands professionally until a general balance due him for professional services is paid and the lien is commensurate with the right which the client delivering the property has in it.

2. SAME—WORDS AND PHRASES—CHARGING LIEN.

An attorney's charging lien is the equitable right to have the fees and costs due to him for services in an action secured to him out of the judgment or recovery in that particular action.

3. SAME—ATTORNEY'S LIEN—RIGHTS OF THIRD PARTIES.

An attorney's lien on property of his client is subject to any rights in the property which are valid against the client at the time the lien attaches.

4. ATTACHMENT—STOCK CERTIFICATE—EFFECTIVE DATE.

The effective date of an attachment of stock belonging to defendant whose certificate is in the hands of defendant's attorney is determined by the date when possession of the stock certificate was actually obtained by the sheriff under the writ of attachment or its transfer restrained (CLS 1961, §§ 600.4035, 600.6037).

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 8, 9]  7 Am. Jur 2d, Attorneys at Law § 272 *et seq.*
[2]  7 Am Jur 2d, Attorneys at Law § 281 *et seq.*
[4]  6 Am Jur 2d, Attachment and Garnishment § 293 *et seq.*
[5]  6 Am Jur 2d, Attachment and Garnishment § 12.
[6, 7]  7 Am Jur 2d, Attorneys at Law § 278.

5. SAME—PURPOSE.

> The purpose of an attachment is to secure a contingent lien on defendant's property until plaintiff can, by appropriate proceedings, obtain a judgment and have the property applied to its satisfaction (CLS 1961, § 600.4001 *et seq.*; GCR 1963, 735).

6. ATTORNEY AND CLIENT—RETAINING LIEN—VOLUNTARY RELEASE.

> Only a voluntary release will defeat an attorney's retaining lien.

7. SAME—RETAINING LIEN—INVOLUNTARY RELEASE—ATTACHMENT—CONTINGENT LIENS.

> Trial court's order authorizing attachment by plaintiff corporation of a stock certificate held by intervenor law firm asserting an attorney's retaining lien, where plaintiff had delivered the certificate to the intervenor, who was counsel for defendant corporation, pursuant to a contract between plaintiff and defendant, but where plaintiff subsequently learned of alleged fraud on the part of defendant, *held*, not to deprive the intervenor of its attorney's retaining lien, but to secure a contingent lien on defendant's property until plaintiff can, by appropriate proceedings, obtain a judgment and have the property applied to its satisfaction.

8. SAME—RETAINING LIEN—ATTACHMENT.

> Intervenor law firm's retaining lien on stock certificate which plaintiff corporation delivered to the intervenor, who was counsel for defendant corporation, pursuant to a contract between plaintiff and defendant, where plaintiff subsequently learned of alleged fraud on the part of the defendant and attached the stock certificate in action for fraud, *held*, to be subject to plaintiff's rights, if any, in a final judgment, which will relate back to the effective date of the trial court's order of attachment.

9. SAME—RETAINING LIEN—ATTACHMENT—INVOLUNTARY RELEASE OF LIEN.

> Intervenor law firm, who held stock certificate for defendant corporation and asserted attorney's retaining lien, but which was ordered by trial court to release certificate to the court on writ of attachment until plaintiff's allegations of fraud on the part of defendant could be determined, *held*, entitled to absolute retaining lien for services rendered before the effective date of attachment and entitled to retaining lien for services rendered after date of attachment subject to satis-

faction of any judgment obtained by plaintiff in action for fraud and subject to termination of attorney-client relationship by attorney or defendant.

Appeal from Wexford, Peterson (William R.), J. Submitted Division 3 March 6, 1968, at Grand Rapids. (Docket No. 1,309.) Decided May 27, 1968.

Complaint by Kysor Industrial Corporation, a Michigan corporation, against D. M. Liquidating Company, a Michigan corporation, Louis M. Dexter, and Lawrence Scudder & Company for fraud and misrepresentation. The law firm of McCobb & Heaney intervened. Judgment for plaintiff against intervenor. Intervenor appeals. Affirmed in part and reversed in part.

*Warner, Norcross & Judd* (*Harold S. Sawyer,* of counsel), for plaintiff.

*McCobb & Heaney,* for intervenor.

HOLBROOK, P. J. This is an appeal by an intervenor law firm from an order determining its rights as counsel for defendant corporation under an attorney's lien to a master certificate for 225,000 shares in plaintiff corporation owned by defendant corporation.

The pertinent facts are: Intervenor-appellant, McCobb & Heaney, is legal counsel for defendant D. M. Liquidating Company and was counsel for its predecessor, Dexter Industries, Inc., hereinafter designated Dexter.

Plaintiff, Kysor Industrial Corporation of Cadillac, Michigan, hereafter designated Kysor, entered into an agreement and plan of reorganization with Dexter dated March 18, 1967, consummated May 31, 1967, with Kysor obtaining all the assets and prop-

erties of Dexter, subject to liabilities, and defendant corporation receiving a master certificate representing 225,000 shares of Kysor common stock which was to be distributed to the shareholders of Dexter.

Plaintiff claims that some time within one week of the final closing, information came to its attention that through improper reporting of inventory in past years the defendant corporation was able to represent to the plaintiff much larger profits for the past 3 years than it actually made. Plaintiff immediately notified defendant corporation and other proper parties as to the claimed fraud so that the stock certificate of plaintiff corporation, subject of the agreement, would not be transferred to innocent third parties for value. On June 8, 1967, defendant corporation retained the intervenor law firm to represent it concerning the entire transaction and to take such action as it deemed proper to protect the interests of defendant corporation. The following day the intervenor came into possession of the master certificate for 225,000 shares of common stock in plaintiff corporation. Since June 8, 1967, the intervenor law firm has rendered legal services to defendant corporation with an expectation to continue to render further services for some time to come. On June 12, 1967, defendant corporation commenced an action in Kent county circuit court against plaintiff for specific performance, or, in the alternative, for rescission of the agreement.

On June 14, 1967, plaintiff commenced the instant action in Wexford county circuit court against defendant corporation; Mr. Dexter, individually; and Lawrence Scudder & Company, certified public accountants. Plaintiff therein elected to affirm the agreement with defendant corporation and to sue for damages as a result of the alleged fraud occurring in the inducement of the agreement. The action against Lawrence Scudder & Company was based on

negligence in failing to present the true financial condition of Dexter.

On the date of filing the civil action, the circuit judge signed an order authorizing attachment of the property of defendant corporation and defendant Dexter under GCR 1963, 735. On June 16, 1967, the deputy sheriff, pursuant to the writ of attachment, attempted to obtain possession from McCobb & Heaney of the master certificate of stock in plaintiff corporation belonging to defendant corporation. The request was denied because McCobb & Heaney claimed exclusive right to possession under its attorney's lien. On July 3, 1967, the intervenor law firm filed a motion to intervene for the limited purpose of "defending against the motion for injunctive order filed by the plaintiff herein, on the ground that applicant is so situated as to be adversely affected by a distribution or other disposition of property which plaintiff's motion seeks to place in the custody or subject to the control or disposition of the court or an officer thereof." After a hearing, the trial judge filed a written opinion on July 12, 1967, in the matter, and an order was filed July 14, 1967, which provides:

"This matter having been heard pursuant to plaintiff's motion for an order directing defendants' attorneys to surrender for attachment the stock certificate in issue and attorneys McCobb & Heaney's motion for leave to intervene to oppose the same, the court having taken briefs from the parties, and the court having issued an opinion upon the question on July 12, 1967,

"It is ordered:

"1. Plaintiff's motion for an order directing the production and surrender of a certificate representing 225,000 shares of Kysor Industrial Corporation common stock for attachment under a writ issued in this action is hereby granted.

"2. Intervenors McCobb & Heaney, defendant D. M. Liquidating Company and its agents, servants, officers or attorneys are hereby directed to deliver to the sheriff of Wexford county for attachment under writ of attachment No 718 issued July 14, 1967 in this action, the stock certificate representing 225,000 shares of the common stock of Kysor Industrial Corporation delivered to defendant D. M. Liquidating Company on May 31, 1967, pursuant to an agreement made on March 18, 1967, between Kysor Industrial Corporation and certain directors, officers, and stockholders of Dexter Industries, Inc.

"3. Possession and custody of the said certificate, held under the said writ of attachment, shall be subject to an attorney's retaining lien in favor only of intervenors McCobb & Heaney for services rendered to defendant D. M. Liquidating Company by intervenors McCobb & Heaney (and for related expenses incurred) during the period between June 8, 1967, and June 16, 1967.

"4. The amount of the attorney's retaining lien preserved hereby shall be determined by the court after hearing thereon, upon due notice."

Intervenor-appellant poses the following question as presenting the issue on appeal:

"Where a firm of attorneys has been engaged to handle long and complicated litigation for a client and at an early stage in the course of the engagement obtains possession from the other party to the litigation by voluntary delivery of a valuable stock certificate which is the sole asset of the client and the principal subject of the litigation, upon which stock certificate the attorneys perfect a common-law possessory attorney's lien, can the other party to the litigation by subsequent service of a writ of attachment prevent enlargement of the attorney's lien for services and disbursements in the subsequent conduct of the litigation, and, upon payment of services and disbursements to the date of service

of the writ, dispossess the attorneys of the certificate held under their lien?"

In 7 CJS, Attorney and Client, § 207, p 1137 it is stated that "an attorney's lien is of two kinds; one is called the general, retaining, or possessory lien, and the other the special, particular, or charging lien."

Section 210, p 1141 states:

"The general or retaining lien of an attorney is his right to retain possession of all documents, money, or other property of his client coming into his hands professionally until a general balance due him for professional services is paid.

"While some question has been raised as to the correctness of the term 'lien' so applied, the right itself has never been denied.

"*Limitation to interest of client.* A retaining lien is commensurate with the right which the client delivering the property has in it.

"*Possession essential.* In order that a retaining lien may exist, it is essential that the attorney claiming such lien have possession of something to which such lien can attach."

Section 211, p 1142 states in part:

"The special or charging lien of an attorney is an equitable right to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in that particular suit.

"The lien is based on the natural equity that plaintiff should not be allowed to appropriate the whole of a judgment in his favor without paying thereout for the services of his attorney in obtaining such judgment."

Section 229, pp 1176–1178 states in part:

"An attorney's lien is subject to any rights in the property which are valid against the client at the

time the lien attaches. It is also subject to administration and funeral expenses, and to claims for advances of money to carry on the necessary litigation. On the other hand there exists authority to support the general proposition that an attorney's lien is paramount and under statutes conferring a lien on attorneys it is held that the lien created is a first lien. It is at least entitled to as much protection as any other lien having a similar status. At any rate an attorney's lien is paramount to the rights of the client and his creditors, even a creditor in whose favor execution has been levied, or who has acquired a lien in supplementary proceedings or in garnishment proceedings. Moreover an attorney's lien upon the fund or property recovered is superior to the rights of the heirs of plaintiff, or to the rights of a surety for the adverse party."

The trial judge, in determining the issue before him, ruled that the intervenor attorney's retaining lien was superior to the attachment of the plaintiff but only for the services rendered from June 8, 1967, when the intervenor was retained by defendant corporation until June 16, 1967.

The trial judge properly ruled that Michigan recognizes attorney's retaining liens[1] and attorney's charging liens.[2] He further stated in part:

"The lien exists as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients. It does provide a means of securing the legitimate interest of the attorney in payment for his services and expenses on behalf of the client, but it is subject to the control of the court for the protection of the client and third parties as well, as in *Haskins* v. *Bell* (1964), 373 Mich 389; *Reeck* v. *Polk* (1934), 269 Mich

---

[1] *Robinson* v. *Hawes* (1885), 56 Mich 135; *Pierce* v. *Underwood* (1894), 103 Mich 62.
[2] *Wipfler* v. *Warren* (1910), 163 Mich 189; *Bruce* v. *United States* (ED Mich, 1955), 127 F Supp 858.

252; and *Wipfler* v. *Warren* (1910), 163 Mich 189. It is not a right intended to protect the client from his other creditors, or to permit the attorney to withhold indefinitely (as in the cases cited) assets of the client exceeding in value the claim for which a lien is asserted.  *  *  *

"While the court has not noted any precisely identical cases, there is adequate authority for the proposition that an attorney's lien is not lost by a transfer of possession to the court or to another person for special purposes under court order, *e.g., Cory* v. *Harte* (1885), 13 Daly (NY) 147; *In re Hauptmann* (1935), 243 App Div 616 (277 NYS 631); *Brauer* v. *Hotel Associates, Inc.* (1963), 40 NJ 415 (192 A2d 831). The underlying reason, of course, rests in the unilateral nature of a lien claim. Originating with the attorney, only his voluntary release (or acts amounting to waiver or estoppel) will defeat the lien. See, generally, 7 Am Jur 2d, Attorneys, §§ 278, 279. Thus even a release of possession to a trustee with notice of the lien does not release it. *Clark* v. *O'Donnell* (1920), 68 Colo 279 (187 P 534). There would thus seem to be no question as to the power of the courts, because of their supervisory control of counsel and because of their equitable powers to deal practically with their own dockets, to order delivery of the property from the possession of the attorney where his interest can be protected (or to protect his interest in the subject matter of litigation where dealing with charging liens, the judicial power being the same though the liens are different). See *Steiner* v. *Stein* (1948), 141 NJ Eq. 478 (58 A2d 102); *Brauer* v. *Hotel Associates, Inc., supra; In re Samuel August & Co., Inc.* (D NJ, 1964), 228 F Supp 443; *Robinson* v. *Rogers* (1924), 237 NY 467 (143 NE 647). *Cf. Bulk Oil Transports* v. *Robins Dry Dock & Repair Co.* (CA 2, 1921), 277 F 25, where the property consisted of documents of no intrinsic value and was left to the exclusive possession of the lienor. While there are no comparable Michigan cases involving retaining liens, the equiva-

lent disposition has been made of charging liens. *Fannon* v. *LeBeau* (1928), 245 Mich 162; *Jones* v. *Dickerman* (1893), 95 Mich 289. In *Wipfler* v. *Warren, supra,* a receiver *pendente lite* held certain assets. On a motion for substitution of counsel, the court ordered such substitution and also found a lien on the assets in the hands of the receiver *and directed payment.* Such an order was held to be within the power of the court, it being noted that counsel would not be heard to object to substitution if his lien was protected by the court. See also the annotations in 33 ALR 1291, and 3 ALR2d 148."

The effective date of the attachment is determined by the date when the possession of the stock certificate was actually obtained by the sheriff under the writ of attachment or its transfer restrained. CLS 1961, § 600.6037 (Stat Ann 1962 Rev § 27A.6037) and CLS 1961, § 600.4035 (Stat Ann 1962 Rev § 27A-.4035). The controlling date is not disclosed in the record furnished this Court, and we deem it unnecessary to know for a decision.

The effect of the attachment in question is important in construing the rights of the intervenor-appellant by way of an attorney's lien in the stock certificate of defendant corporation attached by plaintiff. The purpose of the writ of attachment bears directly upon this question. For light concerning the purpose of attachment law we turn to 7 CJS, Attachment, § 2, pp 189, 190:

"Under the present statutes,[3] in most jurisdictions, the chief purpose served by the remedy is to secure a *contingent lien* on defendant's property until plaintiff can, by appropriate proceedings, obtain a judgment and have such property applied to its satisfaction [*Feldman* v. *Preston* (1916), 194 Mich 352]   *   *   *

---

[3] Presently, see CLS 1961, § 600.4001 *et seq.* (Stat Ann 1962 Rev § 27A.4001 *et seq.*).

"It is not the purpose of an attachment to deplete the fund or pay out the property attached, or its proceeds; and the security provided is not for the debt, *but for the satisfaction of the judgment which results from the prosecution of the action,* and it is given to the creditor by law, not by voluntary action of the debtor. Attachment is not a proper remedy by which to recover specific property." (Emphasis supplied.)

As stated, the purpose of an attachment is to secure a contingent lien on defendants' property until plaintiff can, by appropriate proceedings, obtain a judgment and have the property applied to its satisfaction. We conclude, as did the trial judge, that the taking of possession of the stock certificate owned by defendant corporation by the court does not deprive the intervenor law firm of its attorney's retaining lien, *i.e.,* only its voluntary release will defeat the lien. We are constrained to hold that the intervenor's retaining lien is still in effect subject to plaintiff's rights, if any, in the final judgment. Such final judgment, if in plaintiff's favor, will relate back to the effective date of the attachment. In any event, the intervenor's retaining lien will be absolute for services rendered to the effective date of the attachment and for services rendered subsequent thereto subject to the satisfaction of a judgment in plaintiff's favor or subject to the attorney-client relationship being terminated by the intervenor or defendant corporation. The trial judge was correct in determining that the intervenor law firm was entitled to an attorney's retaining lien for services rendered to defendant corporation, but the trial judge improperly ruled that the lien be limited to services rendered during the period between June 8 and 16, 1967. Such ruling is premature. For the reasons set forth, the determination of the extent of the attorney's lien

should not have been made until the trial on the merits and the final judgment.

The intervenor-appellant is also entitled to a return of the property, the subject of the attorney's lien, after plaintiff's rights in any judgment obtained by it as defined in this opinion are satisfied.

Affirmed in part and remanded for the entering of an order not inconsistent with this opinion. Costs to intervenor-appellant.

QUINN and McINTYRE, JJ., concurred.