DAUL *v* SILL MORTGAGES, INC

1. MORTGAGES—RESTORING DAMAGED PROPERTY—REDUCING DEBT—INTENT OF PARTIES.

> Sums awarded to mortgagors pursuant to a settlement for purposes of restoring the mortgaged property damaged by fire was properly distributed to the mortgagee to reduce the mortgage debt where the settlement agreement contains no provision for distribution on any condition other than restoration, the mortgaged house was condemned as unsafe 7-1/2 months after the execution of the settlement, and the mortgagor's failure to effect restoration was not excused by supervening impossibility, because the agreement manifests the intention of the parties that the sums awarded were to inure to the joint benefit of both mortgagee and mortgagor.

2. ATTORNEY AND CLIENT—ATTORNEY'S LIEN—RELEASE OF LIEN.

> An attorney's lien attaching to the sums awarded in settlement to mortgagors, the attorney's clients, for purposes of restoring the mortgaged property, damaged by fire, was released by language in the settlement agreement which specifically provided that the proceeds were to be signed over to the mortgagee.

Appeal from Muskegon, Albert J. Engel, J. Submitted Division 3 December 8, 1971, at Grand Rap-

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  55 Am Jur 2d, Mortgages §§ 274, 283.
[2]  7 Am Jur 2d, Attorneys at Law § 278 *et seq.*

ids.    (Docket No. 10888.)    Decided January 20, 1972.

Complaint by Lloyd and Jo Ann Daul and George Stribley against Harold A. Dewey, Pioneer Mutual Insurance Company, William H. Sill Mortgages, Inc., and Farm Bureau Life Insurance Company of Michigan to enforce disbursement of sums awarded to the plaintiffs pursuant to a stipulation between the parties. Judgment for defendants. Plaintiffs appeal. Affirmed.

*George D. Stribley,* for plaintiffs.

*Hillman, Baxter & Hammond,* for defendant Farm Bureau Life Insurance Company of Michigan.

Before: R. B. BURNS, P. J., and FITZGERALD and V. J. BRENNAN, JJ.

R. B. BURNS, P. J. Defendant, Sill Mortgages, Inc., assigned a mortgage to defendant, Farm Bureau Life Insurance Company, which had been taken on plaintiffs' home. Sometime thereafter, plaintiffs' home was extensively damaged by fire. Upon discovering that fire insurance had never been issued for their home, plaintiffs instituted suit against the defendants. The suit was settled by stipulation which reads, in part:

"1. That the plaintiffs' claims against the defendants be settled for $4,000.  *  *  *

"7. That the plaintiffs shall proceed to arrange for the restoration of the premises damaged by fire, being the subject matter of litigation in this suit, and of the said $4,000 the defendant Farm Bureau Life Insurance Company of Michigan shall pay to the

plaintiffs and/or their contractors, the amount of their respective statements for the work done in connection with the restoration of the damaged premises."

The estimated costs of restoration known by plaintiffs during negotiations were $700 over the settlement figure of $4,000. Plaintiffs were unable to obtain satisfactory financing for the extra $700. After a time, the restoration cost estimate rose to $6,500. Approximately 7-1/2 months after the execution of the stipulation agreement plaintiffs' house was found unsafe and condemned by the City of Muskegon. Plaintiffs have not restored their house and admit they have no intention of doing so in the future. Plaintiffs' purpose in the present suit is to obtain the $4,000 held by Farm Bureau to purchase household furniture. Farm Bureau desires to apply the $4,000 against the plaintiffs' mortgage debt. Farm Bureau has instituted foreclosure proceedings because of plaintiffs' default on the debt.

Pursuant to the declaratory judgment procedure of GCR 1963, 521, the trial judge upheld Farm Bureau's decision to apply the $4,000 against the mortgage debt. Plaintiffs had plenty of time to arrange for restoration of the mortgaged home. The record does not present a case of "supervening impossibility"[1] excusing the plaintiffs from their contractual promises to restore the house.

Regardless of how the stipulation agreement terminated we still have the problem of disbursing the $4,000. The contract contains no provision for distribution of the $4,000 on any conditions other than restoration of the house. In "ascertaining the intention of the parties" the trial court adhered to a

---

[1] This form of impossibility develops after the inception of a contract. *Bissell* v *L W Edison Co*, 9 Mich App 276 (1967).

cardinal rule of contractual interpretation. *Klever v Klever*, 333 Mich 179 (1952).

In its decision the trial court determined that both parties to the agreement had intended the $4,000 to inure to the joint benefit of both mortgagee and mortgagor. Both parties wished to protect their separate interests in the mortgaged property. Permitting the plaintiffs to purchase personal property with the $4,000 would be inconsistent with their original intentions. The trial court's decision to have the $4,000 applied against plaintiffs' mortgage debt is consistent with the parties' original intentions.

Plaintiffs' attorney claims a lien over the $4,000. Under Michigan law attorneys' liens, if not waived or released, are upheld and founded upon common law. *Kysor Industrial Corp v D M Liquidating Co,* 11 Mich App 438 (1968). By drafting a settlement agreement which specifically provided that the proceeds were to be signed over to Farm Bureau, plaintiffs' attorney released the lien.

Affirmed. Costs to defendants.

All concurred.