878 F.2d 1436
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TRANSCONTINENTAL LEASING, INC., Plaintiff-Appellee,
Hussein Z. Keilani, Plaintiff-Appellee, Cross Appellant,
v.
DURANT & DURANT, P.C., Defendant-Appellant,
Michigan National Bank of Detroit, Defendant.
 Nos. 88-1122, 88-1193.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1989.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges, and THOMAS A. BALLANTINE, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 Appellant Durant & Durant, P.C. (Durant), a law firm, appeals the decision of the district court holding that it was not entitled to all the attorney's fees it claimed were owed to it by Hussein Keilani. Keilani cross-appeals, claiming that the court erred in finding that certain state court liens held by Durant on funds belonging to Keilani were valid. We hodl that Durant was entitled to both the funds awarded by the district court and some portion of the additional funds claimed on appeal. We therefore affirm in part, reverse in part, and remand for further proceedings.
 
 
 2
 * In September 1984, Durant and Keilani entered into an attorney-client relationship, with Durant agreeing to represent Keilani in various matters. At the time, Keilani could not afford to pay any fees, so Keilani agreed to assign to the firm up to $35,000 of any monies he received from his suit against the Michigan National Bank (Michigan bank), which was then pending in the court below. Durant also performed work for Keilani in the Michigan bank suit, but these particular assignments related only to work done in other legal matters. In March 1985, another assignment agreement was signed, assigning Durant up to $70,000. The parties disagree as to whether this assignment was in addition to the $35,000 or in substitution for it.
 
 
 3
 In March 1986, Durant requested a third assignment, this time for $105,000. Keilani refused to agree to this assignment. Durant then moved to withdraw as Keilani's attorney in state court and also filed motions in state court to determine what "retaining" liens it was entitled to pending Durant's turning over Keilani's files to his new attorney.[1] The original retainer agreement signed by the parties required Keilani to pay the costs of withdrawal and also allowed for late charges on unpaid fees.
 
 
 4
 In August 1986, after Keilani won a final judgment in his suit against the Michigan bank, Durant presented the two assignments to the Michigan bank and demanded payment, as did other creditors of Keilani. In an attempt to avoid dealing with multiple claims, the bank paid the funds into the district court. In October 1986, Durant, by virtue of the assignment and having previously represented Keilani in the Michigan bank case, sought to intervene in this case to recover its fees. In December 1986, Durant asked the court below to grant it a lien for fees owed to it for work done for Keilani in the Michigan bank case.[2] The district court postponed any decision on these liens until the Michigan bank could start interpleader proceedings.
 
 
 5
 In March 1987, Durant filed a detailed claim with the court below, requesting $105,000 from the two assignments, $45,020.05 to satisfy the retaining liens granted in state courts, and fees for its representation of Keilani in the Michigan bank case (the charging lien). The district court, after setting aside $152,255.42 of the judgment pending resolution of Durant's claims, then referred the case to a magistrate.
 
 
 6
 In November 1987, after an evidentiary hearing, the magistrate made his report and recommendation. He concluded that Durant should receive a total of $160,650.25: $105,000 from the assignments; $45,020.05 from the state court liens; and $10,630.20 to satisfy the charging lien. Keilani objected to the magistrate's decision, except as to the charging lien. In its response to Keilani's objections, Durant claimed that the amount of the charging lien was too small and asked that it be raised to $16,746.29.
 
 
 7
 The district court then held oral argument on the objections to the magistrate's report on January 12, 1988. The court ruled that Durant was entitled only to the retaining liens and the charging lien. The court held that the assignment did not create a property right. Rather, it was held as security for the payment of fees. The court also held that the magistrate erred in finding that the assignments were cumulative; the court held that one assignment substituted for the other. The court then ordered that the money satisfying the liens, totalling $55,650.25, be paid to Durant and that the rest of the money held by the court go to Keilani. Disbursement of these funds, with the exception of the $10,630.20 charging lien, has been stayed pending this appeal.
 
 II
 
 8
 Durant first argues that it was entitled to $6,116.18 more than the magistrate and the district court awarded on the charging lien. Durant claims it is entitled to the additional amount because its retainer agreement with Keilani states that it is entitled to late charges on unpaid fees and that this revised amount reflects those charges. Up to this point, Durant's argument seems to be supported by the record.
 
 
 9
 However, as Keilani argues and the district court held, Durant did not object to the magistrate's findings on the amount of the charging lien and therefore waived any appeal based on this objection. U.S. v. Walters, 638 F.2d 947, 949-50 (6th Cir.1981) (holding that Congressional policy "is best served by our holding that a party shall file objections with the district court or else waive right to appeal"). Durant argues that it did make this argument in its response to Keilani's objections. It contends that the interests of the waiver rule are served by raising the objection in the response brief because Keilani had an opportunity to respond to Durant's contentions in the hearing held by the court below. The issue, in fact, was raised by Durant in oral argument over Keilani's objections. Durant contends that this case does not involve one side blindsiding another on appeal.
 
 
 10
 Durant's position is incorrect. The idea behind the Walters rule is that each party is responsible for clearly stating its own objections to the magistrate's report so that the other side can reply to those objections in an orderly fashion. If objections can be brought up in response briefs, the other side will not have a chance to respond, at least in pleadings, to those arguments. In addition, it is sometimes difficult to tell if a party in a response is making a formal objection to the magistrate's report or is merely providing additional reasons to reject the opposing objections. One who disagrees with an aspect of a magistrate's report must object initially and make it clear exactly what is objected to.
 
 III
 
 11
 Durant next contends that the district court erred in rejecting the magistrate's recommendation that it be awarded $105,000 by virtue of the assignments. It contends that the assignments, on their face, create property rights in the judgment and should have been enforced as such. Durant argues that these assignments were payments for legal services rendered and not simply security for the non-payment of bills.
 
 
 12
 In support of this contention, Durant points out that the bills given to Keilani show that when the second assignment (for $70,000) was made, Keilani had been charged for $35,000 in fees. When the third assignment was requested, about $105,000 in fees had been accumulated. These figures show, Durant argues, that the assignments were meant as direct payments for legal bills. They also show that the assignments were cumulative, meaning that they were not to substitute for one another. For example, Keilani originally assigned Durant $35,000. According to Durant, this assignment was the same as a cash retainer. When that money ran out, Keilani gave Durant another $70,000, which lasted until the amount of both assignment combined ($105,000) was reached. Durant contends that if the second assignment had substituted for the first he would have asked for the third assignment after the fees passed the $70,000 mark.
 
 
 13
 Keilani, as did the lower court, argues that, in fact, the assignments were only meant to be held as security for Durant in case Keilani did not pay his bills, not as actual payment and did, in fact, substitute for one another. The court below cited a letter written by Durant to Keilani in June, 1985 stating:
 
 
 14
 I might add that there was a provision in that first assignment that if the amount you owed us rose to more than $35,000.00, you would sign a second assignment. I would point out to you that it became necessary to sign a second assignment; that now up to $70,000.00 of your claim against the Michigan National Bank has been assigned to us; and that there is a provision in that second assignment that, if the amount reaches more than $70,000.00, you will make a third assignment.
 
 
 15
 This letter seems to say that the second assignment went up to $70,000, not $105,000 as claimed by Durant. Later in that letter, Durant seems to confirm that the assignment was a security device, not a payment:
 
 
 16
 I should point out to you, also, that the assignment is not worth $70,000.00; it is only worth the amount of our costs and fees up to $70,000.00; and that if our costs and fees amount to less than that figure, we will receive less than that figure. Don't think that you have, necessarily, given up $70,000.00 worth of your judgment against the Michigan National Bank; you have not. You have simply provided us with some security for our efforts. (emphasis supplied)
 
 
 17
 Thus, Keilani argues, the assignment was meant as a security if Keilani did not pay his bills after receiving his judgment. Once Keilani won his case he was to pay his bills from that judgment. If he did not pay Durant, Durant could move against him on the assignments. The assignments were not meant as direct payments; they were made in case Keilani did not pay his bills. See De Korwin v. First National Bank of Chicago, 318 F.2d 176 (7th Cir.1963) (holding that if an assignment is made as collateral security for a debt it will be treated as a security device even if it is in the form of an absolute assignment).
 
 
 18
 We disagree with Keilani and the court below. We interpret the agreement between the parties as a contract to use the assignment as a retainer. The assignment thus was to act as a cash payment (hence the term "balance" in the retainer agreement), with Durant keeping whatever it billed and refunding the rest. The language of the retainer agreement confirms this point. After stating that Keilani will be billed at $85 an hour, the agreement states:
 
 
 19
 to secure payment of this sum you agree to execute an Assignment to us in the amount of $35,000.00 against any judgment or claim you recover against the Michigan National Bank ... and to execute further assignments as may be needed in the event that the total sum billed under this paragraph exceeds the amount of the assignment or assignments. We, for our part, agree to release one-half of any remaining unused balance under the Assignment[s] if, in fact, there remains any unused assigned balance.
 
 
 20
 In addition, in the proceedings before the magistrate, Keilani did not dispute the fact that the assignments were property rights; he merely quibbled about the amount. This factor is strengthened by the fact that Richard Durant, a partner in the firm, testified at the evidentiary hearing that he told Keilani that he would refund the unused portion of the assignment money if the bills did not reach the maximum amount, while Keilani did not refute Durant's version of the story. We thus conclude that, based on the record before us, that the assignments were meant to be a transfer of property, not a mere security interest.
 
 
 21
 As to whether these assignments were cumulative, we hold that the trial court, in reversing the magistrate's finding on this issue, did not sufficiently review the record compiled in the evidentiary hearing to fulfill its responsibility to review that decision de novo. See Thornton v. Jennings, 819 F.2d 153, 154 (6th Cir.1987) (per curiam) ("28 U.S.C. Sec. 636(b)(1) and Article III of the Constitution require that the district court make a de novo review of the magistrate's report and recommendations.") The court below based its decision only on the written report of the magistrate and the briefs of the parties. The transcript of the hearing conducted by the magistrate had not been prepared when the district court rendered its decision. At that hearing, Durant testified as to his belief that the assignments were cumulative, while Keilani did not testify at all. Before rejecting Durant's testimony and, more pertinently, the magistrate's finding, the district court must review all evidence, including the testimony given at the hearing. We therefore hold that this matter should be remanded to the court below so it can review the transcript before deciding whether $70,000 or $105,000 should be awarded on the assignment.
 
 IV
 
 22
 Keilani, in his cross-appeal, argues that the trial court erred in holding that the retaining liens were valid. Keilani contends that these liens are only valid when an attorney has specific client property and holds it until the client pays. Here Durant does not have any of Keilani's property, and never had any property concerning the federal case at issue here. These liens, Keilani argues, simply have nothing to do with this case. Keilani also contends that these liens are not final judgments and cannot be used to obtain funds from the judgment in this case.
 
 
 23
 Durant responds that the retaining liens were validly obtained in state courts and are enforceable in this court. Durant, citing Kysor Industrial Corp. v. D.M. Liquidation Co. et al., 11 Mich.App. 438 (1968), correctly points out that Michigan courts have held that attorneys may obtain and keep retaining liens without maintaining possession of the specific property if the attorney evinces his intention to retain the property, but the court decides it would be better, for the protection of the client and third parties, that the documents or other property held by the attorneys be turned over to the client. In Kysor, for example, a court ordered that a plaintiff be allowed to attach property on which the defendant's attorney had a retaining lien. The court ruled that the attorney maintained his lien even if the property had gone to another party.
 
 
 24
 We hold that this case presents the same situation as Kysor. Durant did have possession of Keilani's files, but for Keilani's sake and the sake of those involved in Keilani's legal matters, it turned over the files to another attorney in exchange for retaining liens. In other words, Keilani is still required to pay Durant, even though Durant gave up its former client's files.
 
 
 25
 As far as Keilani's argument that the lien orders were not final judgments that should not be enforced, the liens were obtained in state court proceedings in which Keilani had the chance to challenge their validity. He did not challenge their validity then, and he did not appeal the grant of the liens. Keilani is now attempting to remedy this delinquency by collaterally attacking the liens in this court. As the court below stated, it is not up to the federal court to determine the validity of the state liens. Once it determines that the question was litigated in state court, the liens must be enforced. For example, one of the lien orders states that after an evidentiary hearing, the court holds that "Keilani is indebted to said firm for [the specified] amount. Durant & Durant, P.C. may have a lien upon any judgment for settlement in this cause or any other in favor of the plaintiff." This order gives Durant a right to the specified amount of Keilani's judgment.
 
 V
 
 26
 Finally, Keilani argues that it was contrary to law to pay Durant for the retaining liens out of federal district court funds. He cites Rule 67, Fed.R.Civ.P., which provides that no money deposited with a federal court shall be withdrawn except by order of the court. He argues that the provision means that such funds are not subject to any attachment, garnishment, or similar process from another court, and that these liens are from other courts and cannot be paid out of the fund in this case.
 
 
 27
 In fact, though, Durant is an intervenor in this case, and the funds are being paid as of a matter of right in this proceeding, not as part of any garnishment action. They are being paid on the order of this court, as required by Rule 67. The firm made its claim and a fund was created to pay out any legtimate claims. It did not come in with a state court order to take the fund. The district court, not any other, ordered that the money be paid to Durant. For the foregoing reasons, the decision of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
 
 
 
 *
 The Honorable Thomas A. Ballantine, Jr., United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 A retaining lien is a lien in which an attorney retains a client's property, such as the client's files, until the attorney's fees are paid
 
 
 [2]
 This type of lien is called a charging lien. A charging lien is a lien placed on a client's judgment by an attorney who worked on the matter resulting in the judgment