No. 90,307

In the Matter of the Marriage of R. WAYNE BROWN, *Defendant/Appellee,* and KATRINA BROWN, *Plaintiff/Appellee.*

JOHN W. LEHECKA, *Movant/Appellee,* v. TIER TECHNOLOGIES, INC., d/b/a KANSAS PAYMENT CENTER, *Respondent/Appellant.*

109 P.3d 1212

Opinion filed April 22, 2005.

*Todd B. Butler*, of Butler & Associates, P.A., of Topeka, argued the cause and was on the brief for appellant.

*John W. Lehecka*, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This appeal of a district court's ruling regarding an attorney's lien spotlights procedures followed by appellant Tier Technologies, Inc., d/b/a Kansas Payment Center.

Prior to the resolution of this divorce case between R. Wayne Brown and Katrina Brown, Katrina's attorney twice filed an attorney's lien against his client's anticipated property settlement and support payments. The attorney, John W. Lehecka, served notice of both liens on Katrina and on Wayne's attorney, T. Michael Wilson.

When the divorce was granted, the district judge directed that all payments from Wayne to Katrina be made through the Kansas Payment Center (the Center). In the journal entry, the Center was ordered to forward all payments to Katrina at "301 W. Central, #203, Wichita, KS 67202," which was Lehecka's office address.

Approximately a year and a half after the divorce was granted, Wayne sent two checks to satisfy his entire settlement and support obligation to the Center. Although the checks were made out to both Katrina and Lehecka, the Center processed the checks without Lehecka's knowledge or signature and sent all of the proceeds directly to Katrina's address instead of to Lehecka's office. Evidently, Katrina's address rather than Lehecka's office address was shown on the electronic version of case information earlier sent to the Center.

Lehecka filed a motion in the district court, claiming the Center wrongfully paid the money due him to Katrina.

The Center challenged the district court's jurisdiction, arguing Lehecka was required to intervene in the divorce action before he could recover his fees.

The Center also argued before the district court that checks sent to the Center often have two payees, usually when an ex-spouse is paying child support and the minor child's name appears on the

check. Because the minor child's name is not included in the case information given to the Center, the Center simply checks for two other points of identification on the check, such as the court case number and the correct name of the other payee. If two identification points are found, the check is processed even though it contains the child's name as well. The Center claimed the problem that arose in this case cannot be avoided because of the large volume of checks it receives each day.

The district court held two hearings on Lehecka's motion. Katrina attended the first hearing but not the second, despite having been subpoenaed by the Center.

At the first hearing, the court announced that the Center had been joined in the action. The court heard the parties' arguments and instructed the Center to pay the entire amount of the property settlement and maintenance into the court. The court then decided that another hearing was needed to determine how the money paid into court would be disbursed.

At the second hearing, the Center argued that Katrina's property settlement and maintenance amounts qualified as exempt property under K.S.A. 2004 Supp. 60-2308(e). The property settlement amount was exempt, it said, because it was based on proceeds from the sale of Katrina's homestead and a portion of Wayne's retirement account. The maintenance amount was exempt, the Center argued, because the district court had not entered judgment until 16 months after maintenance payments were to have begun.

The court found that there were two payees listed on the checks from Wayne and that the Center improperly processed the checks and paid all of the proceeds to Katrina. In addition, despite holding that the Center lacked standing to argue that the payments to Katrina qualified as exempt property, the district court said an amount equal to four of the monthly maintenance payments was exempt because those four payments were not yet past due at the time of the district court's final order on the property settlement and support. The district court also ordered Katrina to indemnify the Center in the amount of $19,003.25.

Our analysis begins with the language of the attorney's lien statute, K.S.A. 7-108, which reads:

"An attorney has a lien for a general balance of compensation upon any papers of his or her client which have come into the attorney's possession in the course of his or her professional employment, upon money in the attorney's hands belonging to the client, and upon money due to the client and in the hands of the adverse party, in any matter, action or proceeding in which the attorney was employed, from the time of giving notice of the lien to the party; such notice must be in writing, and may be served in the same manner as a summons, and upon any person, officer or agent upon whom a summons under the laws of this state may be served, and may also be served upon a regularly employed salaried attorney of the party."

To the extent this case requires interpretation of this statute, our standard of review is unlimited. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

The Center argues the district court erred in enforcing Lehecka's attorneys' liens against it, because it was not an adverse party and because it received no notice of the liens.

For his part, Lehecka argues that there was no need for the district court to enforce the liens. Rather, the liens were effective and properly enforced against Wayne, and Wayne dutifully made his checks payable to both Katrina and Lehecka. According to Lehecka, the Center had all the notice it deserved of Lehecka's interest in the checks, because each was made payable to both Katrina and Lehecka; the Center nevertheless negotiated the checks without his endorsement, which was improper.

We agree with Lehecka that his liens were effective against Wayne, the adverse party in the divorce action. Under the plain language of the governing statute, Lehecka had liens "for a general balance of compensation . . . upon money due to the client and in the hands of the adverse party, in any matter, action or proceeding in which the attorney was employed, from the time of giving notice of the lien to the party." K.S.A. 7-108. There is no dispute that Lehecka's notice of the two liens was in writing and correctly served, and Wayne responded appropriately by naming Lehecka as one of the payees on the two checks.

In short, Lehecka's liens had attached to the money represented by the two checks before the checks were ever forwarded to the Center. The more difficult issue before us is whether Lehecka's liens were somehow defeated when the checks passed through the

Center. This court has not previously decided this legal issue, and related authorities from other jurisdictions are few.

*Kysor Ind. Corp. v. D.M. Liq. Co.*, 11 Mich. App. 438, 161 N.W.2d 452 (1968), is closest to this case. In *Kysor*, the Michigan Court of Appeals approved a lower court decision that "an attorney's lien is not lost by a transfer of possession to the court or to another person for special purposes under court order." 11 Mich. App. at 446. In that case, attorneys had possession of a stock certificate belonging to their client, and they refused to relinquish possession of it, claiming they would be adversely affected by disposition of the stock without their knowledge. The court took possession of the certificate and concluded that the "taking of possession of the stock certificate . . . by the court [did] not deprive the . . . law firm of its attorney's retaining lien, *i.e.*, only its voluntary release will defeat the lien." 11 Mich. App. at 448.

In *Steiger v. Armellino*, 315 N.J. Super. 176, 716 A.2d 1216 (1998), Jon Steiger represented Regina Armellino in her divorce. Steiger filed an attorney's lien against money held in escrow in relation to a separate, previous suit. The New Jersey Superior Court held the lien properly attached to the money in escrow. Most important for our purposes, the court then enjoined Armellino, any of her representatives, *and any third party who had notice of the lien* from disbursing the funds before Steiger's fee was decided. 315 N.J. Super. at 184.

In addition, in *Brown v. Vermont Mut. Ins. Co.*, 614 So. 2d 574, 578-81 (Fla. Dist. App. 1993), the court held that an insurance company could be held jointly and severally liable on an attorney's lien when the insurance company had paid the entire settlement amount to the attorney's former client.

In Kansas, pursuant to K.S.A. 2004 Supp. 23-4,118, the Center is empowered by the Department of Social and Rehabilitation Services to collect and disburse payments. Kansas courts may direct that such payments be made through the Center, as the district court did in this case. By accepting and processing the checks, the Center acted as an arm of the court, gaining only a temporary possessory interest in the payments. It did not gain ownership of the checks or the money they represented; it had no right to dis-

burse the proceeds in any manner not previously authorized by the court. See K.S.A. 2004 Supp. 23-4,118. Because Lehecka properly filed and gave notice of his liens, the Center was bound to abide by them. As in the *Kysor* case, the lien remained in effect unless Lehecka voluntarily released it or it was paid.

The Center's argument that it had no actual notice of the liens does nothing to change our view. The two checks from Wayne clearly indicated Lehecka's interest by naming him as a payee. This provided the Center with at least constructive notice and placed on it a duty to inquire as to Lehecka's role and claim. The fact that the Center routinely treats other two-payee checks in such a manner is no defense. In addition, the Center compounded its first mistake here by sending the money directly to Katrina at her address rather than to her at Lehecka's office. Again, its excuse that Lehecka's address was not shown on the electronic case information it had received merely describes another way in which its procedures and the communication it maintains with the court may be improved to avoid future problems.

On appeal, the Center also makes a half-hearted attempt to renew the jurisdictional challenge it raised in the district court, arguing Lehecka's failure to intervene in the action and plead conversion deprived the court of jurisdiction. It cites no authority for this position, and we see none. A Kansas court has subject-matter jurisdiction over disputes involving an attorney's lien filed in a case before it. See *Carson* v. *Chevron Chemical Co.*, 6 Kan. App. 2d 776, 794, 635 P.2d 1248 (1981). And the district court had personal jurisdiction over the Center, which submitted to the court's jurisdiction by entering an appearance and requesting an opportunity to file a response to Lehecka's motion. After the district court granted the Center's request, the Center filed its response and appeared at the two hearings.

We must also address the exemptions claimed by the Center on Katrina's behalf.

We agree with the district court that the Center did not have standing to argue applicability of the exemptions in this case. Whether a litigant has standing is a question of law subject to unlimited review. See *In re Estate of Milward*, 31 Kan. App. 2d 786,

787, 73 P.3d 155 (2003) (citing *State ex rel. Board of Healing Arts v. Beyrle*, 269 Kan. 616, 624, 7 P.3d 1194 [2000]). It is a "question of whether the plaintiff has alleged such a personal stake in the outcome of a controversy as to warrant the invocation of jurisdiction and justify exercise of the court's remedial powers on his or her behalf." *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 30, 59 P.3d 1003 (2002); see also *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 882-83, 47 P.3d 383 (2002).

We have already stated that the Center had no ownership interest in the two checks from Wayne or the money they represented. At most it had a temporary possessory interest, which evaporated as soon as it disbursed the proceeds. Had the Center performed this task correctly, there would have been no controversy between it and Lehecka, although Katrina would have been free to raise exemptions as a defense to her attorney's liens. The Center's failure to discharge its responsibility as a payment agent correctly did not transform it into Katrina's champion; quite the opposite. The Center did not represent Katrina's interests; in fact, it made clear its intention to seek indemnification from her for any amount Lehecka forced it to pay. Although we have upheld a third party's right to claim an exemption in order to protect its interest in property in certain distinct circumstances, see *Bank of Kansas v. Davison*, 253 Kan. 780, 784, 861 P.2d 806 (1993), the Center had no such right here. It lacked any ownership interest in the payments that passed through its hands.

This being said, the district court could have raised the exemption issue *sua sponte*. We therefore examine the correctness of its ruling on the merits.

First, with regard to the property settlement amount, no exemption applies. A large portion of the property settlement represented repayment of a loan Katrina made to Wayne. Even if the loan was made from proceeds from sale of Katrina's homestead, the homestead exemption did not apply. There is no exemption for loan repayment.

A smaller portion of the property settlement represented growth in Wayne's retirement account during his and Katrina's brief marriage. The district judge ordered that Wayne make a cash payment

to Katrina of this amount; the retirement fund proceeds were not rolled into an exempt retirement account.

Second, with regard to the maintenance amount, two earlier Kansas cases are significant.

In the first, *In re Marriage of Wageman*, 25 Kan. App. 2d 682, 968 P.2d 1114 (1998), Roxanne Wageman appealed the district court's order that her attorney's lien could be satisfied out of her settlement received in a claim for unpaid child support. Wageman argued that all child support was "exempt from execution, attachment, or garnishment" pursuant to 60-2308(e), which stated:

" 'Money held by the state department of social and rehabilitation services, any clerk of a district court or a district court trustee in connection with a court order for the support of any person, whether it be identified as child support, spousal support, alimony or maintenance, shall be exempt from execution, attachment or garnishment process.' " 25 Kan. App. 2d at 683.

The Court of Appeals rejected her argument and held that the exemption outlined in "K.S.A. 60-2308(e) does not apply for the reason that the money is a settlement of a disputed claim [for child support]." 25 Kan. App. 2d at 684. Wageman had settled for a lump sum payment for a 6-year arrearage of child support, and the panel concluded that the children had been adequately supported during the 6-year period. Enforcement of the lien would not deprive the children of necessities.

This court distinguished *Wageman* in *In re Marriage of Phillips*, 272 Kan. 202, 206-07, 32 P.3d 1128 (2001). In *Phillips*, the appellee's attorney, James Walker, filed an attorney's lien against payments the appellee was receiving as spousal maintenance. We rejected Walker's attempt to attach his lien to current payments under the authority of *Wageman*. The exemption in 60-2308(e) was held applicable in *Phillips* "because the monies in question [were] being used to pay *current* spousal support." (Emphasis added.) 272 Kan. at 207.

Here, all but four of the monthly maintenance payments were past due to Katrina when Wayne sent his check. Those four payments are controlled by *Phillips*. The other payments are controlled by *Wageman*, because they represented 16 months of past-due support. Katrina, the recipient, had already been adequately

provided for when those payments arrived, and Lehecka's lien trumped the exemption statute covering spousal maintenance.

On remand, the district court should permit Lehecka to recover on his liens against the entire amount of the property settlement and 16 months' worth of the monthly maintenance payments. The Center is entitled to receive any remaining balance on that portion of the monies after Lehecka's liens have been paid. As for the four months' worth of maintenance payments that were not past due, those should be treated as Katrina's exempt property and, therefore, that amount should be returned to the Center. The Center is also entitled to be fully indemnified by Katrina for the amount it pays to Lehecka.

Finally, we also have before us Lehecka's motion for an award of attorney fees on appeal. The Center has filed a response to that motion. We see no justification for an award of fees on appeal. This case raised a novel issue of law. We therefore deny Lehecka's motion.

Affirmed and remanded for proceedings consistent with this opinion.

GERNON, J., not participating.