NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0052n.06

Case No. 20-2252

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CANDISE HOOKER, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| WANIGAS CREDIT UNION, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |
| | ) | |

**FILED**
Jan 26, 2021
DEBORAH S. HUNT, Clerk

BEFORE: CLAY, GIBBONS, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Wanigas Credit Union garnished $884.13 from Candise Hooker's wages during the ninety-day preference period before Hooker filed for bankruptcy. Hooker's employer sent the money to Wanigas's law firm, Shek Law Offices, which retained $452.60 under a contingency-fee agreement between Shek and Wanigas before sending the remaining $431.53 to Wanigas.

After filing for Chapter 7 bankruptcy, Hooker demanded that Wanigas return the garnished wages as a preferential transfer under 11 U.S.C. § 547(b)(1). But Wanigas only returned the $431.53 it had received, so Hooker sought the remaining $452.60 in adversary proceedings in bankruptcy court. Wanigas moved for summary judgment, asserting that the unpaid balance did not qualify as an avoidable preferential transfer under § 547 because the money never landed in Wanigas's coffers and is also subject to an attorney-charging lien. The court denied the motion.

Wanigas filed an interlocutory appeal in district court. The district court exercised its discretion to hear the interlocutory appeal under 28 U.S.C. § 158(a) and affirmed.[1]

On appeal to this court, Wanigas argues that the lower courts erred because the transfer to Shek does not qualify as a preference under 11 U.S.C. § 547(b)(1) and is also subject to an attorney-charging lien. On appeals like this one, we do not review the district court's decision. Rather, we review the bankruptcy court's decision, reviewing factual findings for clear error and legal conclusions *de novo*. *In re Flo-Lizer, Inc.*, 946 F.2d 1237, 1240 (6th Cir. 1991); *In re AMC Mortg. Co., Inc.*, 213 F.3d 917, 920 (6th Cir. 2000). Because the bankruptcy court correctly rejected Wanigas's arguments and denied its motion for summary judgment, we **AFFIRM** and **REMAND** for further proceedings consistent with this opinion.

I.

Under 11 U.S.C. § 547(b), a bankruptcy "trustee may . . . avoid" preferential transfers— "transfer[s] of an interest of the debtor in property" that satisfy the five requirements listed in § 547(b). Wanigas argues that the bankruptcy and district courts erred because the $452.60

---

[1] Under 28 U.S.C. § 158(a), a party may take an appeal from an interlocutory order, like the denial of summary judgment, only "with leave of the [district] court." The district court's jurisdiction hinges on its decision to grant or deny leave to appeal. *See id.* Parties usually file a "motion for leave" under Fed. R. Bankr. P. 8004, seeking leave to appeal. But "[i]f an appellant timely files a notice of appeal under this rule but does not include a motion for leave, the district court . . . may order the appellant to file a motion for leave, or treat the notice of appeal as a motion for leave and either grant or deny it." *Id.* 8004(d).

Wanigas did not file a motion for leave to appeal the interlocutory order in district court. Rather, it simply filed a notice of appeal. But the district court did not "treat the notice of appeal as a motion for leave." *Id.* Rather, it treated the bankruptcy court's order as a final order when it concluded it had jurisdiction over the matter because "[f]inal orders of a bankruptcy court are appealable to a federal district court under 28 U.S.C. § 158(a)." (R. 8, PageID 129.) Because this technicality affected jurisdiction, we dismissed the case and remanded for the district court to determine whether to grant or withhold its consent under 28 U.S.C. § 158(a). The district court granted leave to appeal, curing the jurisdictional defect and paving the way for this panel to now address the merits.

transfer to Shek does not satisfy two of the requirements: 1) that the transfer be "to or for the benefit of a creditor," and 2) that the transfer "enables [the] creditor to receive more than [it] would receive" as a creditor in bankruptcy proceedings. *Id.* Her arguments fail for three reasons.

First, the transfer at issue was "to" a creditor under 11 U.S.C. § 547(b) because Shek received the $884.13 transfer in its capacity as Wanigas's agent. Agents stand in the place of their principals. *See* RESTATEMENT (THIRD) OF AGENCY § 1.01 (AM. L. INST. 2006); *In re Estate of Capuzzi*, 684 N.W.2d 677, 679 (Mich. 2004) ("[T]he agent stands in the shoes of the principal."). And Shek acted as Wanigas's agent when it garnished Hooker's wages. It was Wanigas, not Shek, that obtained a default judgment against Hooker. And Shek only filed the Writ of Periodic Garnishment to collect on that judgment and received payments made payable to the law firm *on behalf of Wanigas*. Had that not been the case, the payments would not have decreased the amount Hooker owed to Wanigas, her judgment creditor—a fact Wanigas does not dispute. Shek was merely the conduit through which Hooker's employer transferred money to Shek's principal, Wanigas; the transfer was "to" a creditor. *See In re Robert Plan of New York Corp.*, 456 B.R. 150, 156 (Bankr. E.D.N.Y. 2011) (holding that a creditor's law firm was merely a "conduit" so transfers were made directly "to" the creditor when they were deposited in the law firm's escrow account); *cf. Fitch v. Kentucky-Tennessee Light Power Co.*, 136 F.2d 12, 16 (6th Cir. 1943) ("Payment . . . to an agent for the benefit of his principal, is the same as payment to the principal.").

Second, the entire $884.13 transfer was also "for" Wanigas's benefit. For is "a function word to indicate purpose." *For*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/for. And because "[s]ection 547 focuses on the purpose and effect of the transaction," other factors, including the "manner in which it is accomplished," are less important. *Matter of Darke*, 18 B.R. 510, 513 (Bankr. E.D. Mich. 1982) (citation omitted). Although the

garnishment writ directed Hooker's employer to send the garnished wages to Wanigas's attorney rather than Wanigas, the purpose of the transfer was clearly not to benefit Wanigas's law firm; it was to satisfy Wanigas's judgment against Hooker. And because payment to Shek discharged Hooker's debt to Wanigas, the payment was for Wanigas's benefit under 11 U.S.C. § 547(b). *See In re C-L Cartage Co., Inc.*, 899 F.2d 1490, 1493 (6th Cir. 1990) (holding that payments to a third-party that discharged a debtor's obligation to creditors were "'to or for the benefit of a creditor' within the meaning of section 547(b)(1)").

It is irrelevant that Shek retained a portion of the funds under its agreement with Wanigas. No matter where the money was ultimately deposited, the transfer's purpose was to satisfy Wanigas's judgment against Hooker. So it was a transfer "for" Wanigas's benefit. *In re Spinnaker Indus., Inc.*, 328 B.R. 755, 764–65 (Bankr. S.D. Ohio 2005) (ruling that because a creditor's law firm "accepted the check for the benefit of" the creditor when it received money for its client, the transfer was preferential even though the attorneys retained a portion of the payment in fees); *see In re Robert Plan*, 456 B.R. at 156 (holding that transfers to a creditor through its law firm were preferential, including portions retained by firm under fee agreement).

Wanigas tries to avoid this conclusion by reading a debtor-intent requirement into the word "for" under § 547(b)(1). Under its reading, the "for the benefit of the creditor" language only applies to cases in which a debtor subjectively intends to benefit a creditor. And because Shek garnished Hooker's wages, Hooker could not have possibly intended anything. It finds support for its argument in *In re Sheppard*, 521 B.R. 599 (Bankr. E.D. Mich. 2014), which held that "[i]n order for a transfer to be 'for the benefit of' a particular creditor within the meaning of § 547(b)(1), the Debtor must have intended the transfer to benefit that creditor." *Id.* at 603. Because an involuntary transfer requires no debtor intent, *Sheppard* also held that the only involuntary

transfers recoverable as preferences were those actually received by the creditor under the word "to"; the "for the benefit" language was off the table. *Id.*

The *Sheppard* rule is inconsistent with the statute. Section 547(b)(1) does not require a particular state of mind on the part of the debtor. The statute merely requires that a "transfer of an interest of the debtor" be "for the benefit of the creditor." 11 U.S.C. § 547(b)(1). That language requires analyzing the reasons underlying the transfer—the purpose. But it does not require an inquiry into the debtor's subjective intent. Indeed, section 547(b) does not require that the debtor set the transfer in motion. It just requires a "transfer of an interest of the debtor." *Id.* And the bankruptcy code defines "transfer" broadly to encompass both voluntary and involuntary transfers. 11 U.S.C. § 101(54). So Wanigas's argument fails under the statute. The transfer here was a transfer "for the benefit of a creditor" under section 547(b).

Third, we are unpersuaded by Wanigas's assertion that Hooker is not entitled to the remaining $452.60 because transferring that amount to Shek did not "enable a creditor to receive more than the creditor would receive" in bankruptcy proceedings. Wanigas's argument on this point is simple. It claims that it never received the $452.60 retained by Shek, so the transfer benefited Shek, not Wanigas. But this argument fails to appreciate that the entire $884.13 was transferred "to and for the benefit" of Wanigas when Shek garnished the funds on Wanigas's behalf. It received the money through its agent. And to/for discussion aside, the transfer, moreover, benefitted Wanigas by satisfying its obligations to Shek under their fee agreement, which required payment upon collection.[2]

---

[2] Shek collected on behalf of Wanigas, so Wanigas owed Shek. It is true, of course, that barring some unforeseen development on remand, the bankruptcy court will likely order Wanigas to return the remaining $452.60 collected. At that point, this fees benefit will no longer exist. But unwinding the collection may also erase Wanigas's obligation to Shek, so Wanigas may have a

Wanigas cannot sidestep avoidance simply because its agent received a transfer on Wanigas's behalf and then retained a portion in satisfaction of Wanigas's obligation to it. As Wanigas itself acknowledged at oral argument, if it had received the unreturned balance directly from Hooker and then paid Shek, the entire $884.13 would be avoidable, meaning that Wanigas would have been required to return the whole amount to the bankruptcy trustee. The only difference here is that Wanigas directed its agent to divide its funds to satisfy its debts before forwarding the balance to Wanigas. The bankruptcy code does not allow creditors to avoid its sweep so easily. Wanigas's argument fails.

## II.

Wanigas also argues that it should not have to return the missing $452.60 because that amount was subject to a valid attorney's charging lien[3] under Michigan law that attached before the preference period. But the existence of a lien against Shek's client's recovery from Hooker is beside the point because Shek is Wanigas's creditor, not Hooker's. Except in circumstances not applicable here, "an attorney's lien is not enforceable against a third party."[4] *Doxtader v. Sivertsen*, 455 N.W.2d 437, 439 (Mich. App. 1990). "It is not a right intended to protect the client from his other creditors . . . ." *Kysor Indus. Corp. v. D.M. Liquidating Co.*, 161 N.W.2d 452, 456 (Mich. App. 1968).

---

claim against Shek. That matter, however, is not before us today. And regardless, Wanigas received the funds when Hooker's employer transferred them to Wanigas's agent.

[3] A charging lien is an equitable right entitling attorneys to "fees and costs due for services secured out of the judgment or recovery in a particular suit." *George v. Sandor M. Gelman, P.C.*, 506 N.W.2d 583, 584 (Mich. App. 1993).

[4] "[A] charging lien can be enforced against third parties when the third party has notice of the lien. But that principle merely states a fundamental principle of charging liens, that when a party holds monies owing to a plaintiff, and has notice of the attorney's lien, it must recognize that lien prior to making a payment to the plaintiff." *Estate of Tams by Findling v. Auto Club Ins. Ass'n*, No. 332558, 2018 WL 340923, at *3 (Mich. Ct. App. Jan. 9, 2018) (Murray, P.J., concurring) (citation omitted).

Further, § 547(b) turns back the clock on preferential transfers like the one here, so assuming Hooker prevails on remand, Wanigas never recovered anything from Hooker. Because attorney-charging liens attach to the "funds or a money judgment" "*recovered*," *George v. Sandor M. Gelman, P.C.*, 506 N.W.2d 583, 585 (Mich. App. 1993) (emphasis added), § 547(b) avoidance here renders the lien meaningless at this stage (Wanigas may recover something as a bankruptcy creditor). In the end, Wanigas never recovered if Hooker avoids the transfer. Consequently, the lower court did not err in determining that Shek's charging lien does not entitle Wanigas to summary judgment.

III.

The bankruptcy court did not err when it denied Wanigas's motion for summary judgment. Wanigas fails to show that the transfer to Shek on behalf of Wanigas was not a transfer "to or for the benefit of a creditor," and Shek's charging lien is irrelevant. We **AFFIRM** and **REMAND** for further proceedings in bankruptcy court.