WARNER v TARVER

Docket No. 87114. Submitted April 8, 1986, at Detroit. Decided
	November 7, 1986. Leave to appeal denied, 428 Mich —.

	Marvin W. Warner and Janet A. Warner sold a restaurant which
	they owned to Kenneth W. Stevens, Delores Stevens and Or-
	dean A. Moen. The real property was sold on land contract,
	while the remainder of the business property was sold subject
	to a security agreement with the business property as collat-
	eral. The Stevens group sold the property and business in a
	similar fashion to Niccob Enterprises, Inc., which in turn sold
	the property and business in a similar fashion to Charles W.
	Tarver. While Tarver by contract agreed to name the secured
	parties as loss payees on the required fire insurance policy,
	Tarver failed to name the secured parties as loss payees. The
	business burned. The insurer denied liability, claiming arson
	and fraud. Marvin and Janet Warner commenced in Wayne
	Circuit Court an action to foreclose on the land contract and
	secured note and to assert the rights they had in any insurance
	proceeds. Tarver engaged Murdoch J. Hertzog for the purpose
	of proceeding against the insurer. Tarver's contract with Hert-
	zog provided that Hertzog should take as his attorney fee one-
	third of any recovery had against the insurer. Through Hert-
	zog's efforts, a judgment in the amount of $203,856 in favor of
	Tarver and against the insurer was secured in a federal court
	action. The insurance proceeds were placed in an escrow ac-
	count pending the Wayne Circuit Court's determination of the
	proper disposition of the proceeds. The Wayne Circuit Court,
	Michael J. Connor, J., awarded $140,051.31 of the insurance
	proceeds to the Warners, that being the amount still owed to
	them under their land contract and note to the Stevens group,
	$34,684.73 of the insurance proceeds to the Stevens group, and
	any remaining insurance proceeds to Niccob based on the
	$145,000 still owed by Tarver. The trial court denied Hertzog's

REFERENCES

Am Jur 2d, Vendor and Purchaser §§ 610 *et seq.*

See the annotations in the Index to Annotations under Attorneys'
	Fees; Sale and Transfer of Property.

motion that his attorney fees be paid out of the insurance proceeds. Tarver and Hertzog appealed.

The Court of Appeals *held:*

The secured land contract vendors have claims to the insurance proceeds superior at law to Hertzog's, which is based on his attorney's lien. Thus, Hertzog has no right at law to be paid out of the insurance proceeds. However, equity demands that, under these circumstances, the land contract vendors pay out of the insurance proceeds on a pro rata basis reasonable attorney fees for the efforts expended by Hertzog to secure the insurance proceeds.

Reversed and remanded.

VENDOR AND PURCHASER — PROPERTY — LAND CONTRACTS — SECURITY INTERESTS — ATTORNEY LIENS — PRIORITIES — EQUITY.

Land contract vendors who have a valid security interest in the conveyed property and thereby have a valid security interest to any fire insurance proceeds have, at law, a right to the insurance proceeds superior to the lien of an attorney who is engaged by the land contract vendee to bring an action against the insurer to secure the insurance proceeds; however, equity demands that the attorney be awarded a reasonable fee from the insurance proceeds, with the land contract vendors paying pro rata shares, where the land contract vendors neither objected to the vendee's securing of the attorney nor offered assistance in the litigation being undertaken to secure the insurance benefits.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Bowden V. Brown*), for plaintiffs.

*Murdoch J. Hertzog,* for Charles W. Tarver and for himself.

*William J. DeBiasi, P.C.* (by *John A. Gyorgy*), for Delores Stevens.

*J.G. Paul Gravel,* for Niccob Enterprises, Inc., John P. Cabauaton, Glen J. Cabauaton and Terrill F. Nickels.

*Noel P. Keane, P.C.* (by *Mark W. Somers*), for Ordean A. Moen.

Before: BEASLEY, P.J., and D. E. HOLBROOK, JR., and D. L. SULLIVAN,* JJ.

PER CURIAM. Defendant Charles W. Tarver was the owner of a bar and restaurant business which was destroyed by a fire on January 13, 1983. Tarver's property insurer denied liability on his claim on the basis of arson and fraud. Tarver hired an attorney, Murdoch J. Hertzog, to represent him in an action against the insurer. On August 2, 1983, Tarver filed suit in the United States District Court for the Eastern District of Michigan against his insurer. Hertzog conducted discovery procedures and represented Tarver in a jury trial, which resulted in a verdict of $203,856 in favor of Tarver.

On July 26, 1983, prior to commencement of suit by Tarver to recover insurance proceeds, plaintiffs, Marvin W. Warner and Janet A. Warner, filed an action in the Wayne Circuit Court to foreclose on a land contract and a secured note that they held on Tarver's business property and to assert the rights they had in any insurance proceeds related to the destruction of the property. The other parties in this action also claimed an interest in any insurance proceeds which were payable to Tarver.

The history of the ownership of Tarver's business property is complex and gives rise to most of the various claims against the insurance proceeds involved in this case. Plaintiffs were the original owners of the business. On July 9, 1973, they sold the business to Kenneth W. Stevens, Delores Stevens and Ordean A. Moen. The real property was sold on land contract, while the remainder of the business property was sold pursuant to the purchasers' delivering a promissory note and security agreement which listed the business property as

* Circuit judge, sitting on the Court of Appeals by assignment.

collateral. On June 17, 1976, the Stevens group sold the business to Niccob Enterprises, Inc. This sale was also made on land contract and a secured promissory note from the purchaser. On August 9, 1979, Niccob sold the business to Tarver, which sale was also made on land contract and a secured promissory note from the purchaser. Hertzog also asserted a claim against the insurance proceeds based on a contingency fee agreement between himself and Tarver which provided him with one-third of any judgment he recovered from Tarver's insurer.

Noting these various claims on the insurance proceeds judgment awarded to Tarver, the federal court ordered that the amount of the judgment be paid into an escrow account with the Wayne Circuit Court pending determination of a proper disposition. Subsequently, all of the parties asserting claims against the insurance proceeds filed motions for summary judgment. The trial judge granted the motions as to the parties asserting claims based on land contracts and secured promissory notes. He specifically awarded $140,051.31 of the insurance proceeds to plaintiffs, based on the amounts owed to them by the Stevens group under the land contract and note. The trial judge awarded $34,684.73 of the insurance proceeds to the Stevens group, based on the net amount owed to them by Niccob under the land contract and note. The trial judge also awarded any remaining insurance proceeds to Niccob based on a net amount of approximately $145,000 still owed to it by Tarver under the land contract and note. The trial judge denied Hertzog's motion that his attorney fees be paid out of the insurance proceeds. Tarver and Hertzog appeal as of right.

On appeal, Hertzog argues that he possesses an

attorney's charging lien against the insurance proceeds which is superior to the claim of other creditors. In addressing this claim, we note that Michigan recognizes a common law attorney's lien on a judgment or fund resulting from the attorney's services.[1] The insurance proceeds herein resulted from the legal services provided by Hertzog. Thus, Hertzog had an attorney's lien on the insurance proceeds. This attorney's lien arose at the time Tarver and Hertzog entered into their contingent fee agreement sometime in 1983, since the other claimants involved in this matter should have inquired into the possible claim of the attorney for his fees relating to recovery of the insurance funds.[2]

However, plaintiffs and the other parties asserting claims to the insurance proceeds argue that they also had valid security interests in the insurance proceeds. We agree. The parties' various security interests in the personal property of the business were created by the promissory notes and related security agreements. These security interests in the personal property collateral continue in the insurance proceeds which result from the destruction of the collateral.[3]

The parties' various security interests in the real property of the business were created by the land contracts. By analogy to the personal property collateral situation, we find that the security interests in the real property continue in the insurance proceeds which result from the destruction of the real property. This conclusion is especially appropriate where, as here, the vendee was contractually bound to obtain fire insurance for

---

[1] *Miller v DAIIE,* 139 Mich App 565, 568; 362 NW2d 837 (1984), lv den 422 Mich 944 (1985).

[2] *Id.,* at 569.

[3] MCL 440.9306(1), 440.9306(2); MSA 19.9306(1), 19.9306(2).

the benefit of the vendor, but failed to do so.[4] Therefore, plaintiffs, the Stevens group, and Niccob had valid security interests in the insurance proceeds which resulted from the destruction of the business property at the time they sold the business property and entered the respective land contracts and security agreements.

Due to the existence of the competing valid security interests and attorney's lien in the insurance proceeds involved herein, we must determine which claim takes priority. The general rule is that a security interest prior in time is superior to a later lien.[5] Under this general rule, the security interests of plaintiffs, the Stevens group and Niccob would be superior to Hertzog's lien, since they attached prior to the time the attorney's lien arose. This Court, in dicta, appeared to adopt this rule for purposes of an attorney's lien in *Kysor Industrial Corp v D M Liquidating Co,*[6] by quoting 7 CJS, Attorney and Client, § 229, p 1176, as follows:

> "An attorney's lien is subject to any rights in the property which are valid against the client at the time the lien attaches."

We note that other jurisdictions have applied the first in time rule in determining the priority of an attorney's lien as to other security interests in the property unless equitable considerations lead to a different result.[7]

In arguing that this general rule of first in time priority does not apply in the attorney's lien situation, Hertzog relies on this Court's decision in

---

[4] *Cottrell v Clark,* 126 Mich App 276, 280-281; 337 NW2d 58 (1983).

[5] MCL 440.9312(6); MSA 19.9312(6).

[6] 11 Mich App 438, 444; 161 NW2d 452 (1968).

[7] See, Anno: *Priority between attorney's lien for fees against a judgment and lien of creditor against same judgment,* 34 ALR4th 665, 672-680.

*Aetna Casualty & Surety Co v Starkey.*[8] However, in *Starkey,* a medical provider's interest in a judgment, which was competing with a later attorney's lien on the judgment, was found to be void as a matter of law. Thus, the *Starkey* decision did not require application of priority rules where a *valid* security interest which arose prior in time was competing with an attorney's lien, as is required for our decision in this case. Based on this factual distinction, we find the *Starkey* decision does not apply to the situation presented in the within case.

Based on our above discussion, we adopt the general rule of priority in time for determining whether a valid security interest in a judgment is superior to an attorney's lien in the judgment. As previously noted, this leads to the conclusion that the security interest of plaintiffs, the Stevens group and Niccob are superior to the attorney's lien of Hertzog; and, therefore, Hertzog should not be able to assert his attorney's lien to defeat the prior valid security interests and thereby collect his contingent fee from the insurance proceeds.

However, in this situation, we believe that equity demands that Hertzog be awarded a reasonable attorney fee from the insurance proceeds that resulted from the services he rendered. Plaintiffs, the Stevens group and Niccob were all aware of the substantial efforts of Tarver and Hertzog to collect the insurance proceeds from Tarver's insurer. They knew that any resulting judgment would directly inure to their benefit. They also should have known that Hertzog would look to any insurance proceeds he recovered for payment of his fees. Despite this knowledge, plaintiffs, the Stevens group and Niccob never offered or provided any assistance to Tarver or Hertzog in their

[8] 116 Mich App 640; 323 NW2d 325 (1982), lv den 417 Mich 929 (1983).

efforts to obtain a judgment for the insurance proceeds. They stood by while Hertzog obtained a judgment, and then they declared that the fund had been created solely by them through the existence of their property.

However true the vendor's assertion may be concerning the original creator or source of the fund, it is clear that the insurance proceeds to which their security interests attached were produced by the sole efforts of Hertzog. Without Hertzog's efforts there would have been no insurance proceeds to which the land contract vendor's security interests could attach. In this situation, it would be inequitable to allow the entire fund produced by the efforts of Hertzog to be applied toward the payment of the prior security interests and leave Hertzog to seek his fee solely from Tarver.[9]

Plaintiffs, the Stevens group and Niccob argue that equity does not require Hertzog to be paid for his services from the insurance proceeds since the only reason his services were necessary was because of Tarver's breach of contract. The land contract and promissory note required Tarver to name the secured parties as "loss payees" on the insurance policy. Tarver failed to do this, thus allegedly breaching his contract to the secured parties. The secured parties assert that, if Tarver had not breached the contract and had named them as loss payees, the insurer would have been required to pay insurance proceeds to them without regard to Tarver's arson or fraud.

However, even if this assertion is correct, we believe it is irrelevant in determining the equities surrounding the claim for attorney fees asserted

---

[9] See *Corigliano v Catla Construction Co*, 231 F Supp 245 (SD NY, 1964); *Foremost Life Ins Co v Waters (On Remand)*, 125 Mich App 799, 805-806; 337 NW2d 29 (1983).

by Hertzog in this matter. Tarver had failed to name the secured parties as loss payees prior to the fire and the subsequent hiring of the attorney. Hertzog then came into the situation and obtained the insurance proceeds, thus rescuing the secured parties from a total loss of the insurance proceeds because of Tarver's alleged breach. The secured parties' proper remedy for Tarver's failure to name them as loss payees is a separate breach of contract action against Tarver, not a denial of attorney fees to the attorney who came on the scene after the breach and obtained the insurance proceeds. The equities in this situation strongly favor an award of reasonable attorney fees to Hertzog.

The only other argument the secured parties present in their attempt to defeat the equitable award of attorney fees is that they had commenced foreclosure proceedings against Tarver prior to the time Hertzog sought the insurance proceeds. We do not see how this fact can shift the equities in this situation. Hertzog does not deny that he knew there were other claims on the insurance proceeds he was trying to recover. The fact that he knew of these other interests in the insurance proceeds did not prevent him from reasonably, and equitably, expecting to receive his fees from any insurance proceeds he obtained for Tarver and the secured parties.

We conclude that the secured parties herein can not sit back and allow Hertzog to obtain insurance proceeds for their benefit and then claim that, since Hertzog knew they had an interest in the insurance proceeds, he may not collect his fees from those proceeds, but must collect his fees only from Tarver. Under these circumstances, equity demands that the secured parties bear a pro rata share of the reasonable attorney fees for the ser-

vices rendered by Hertzog in securing a judgment for the insurance proceeds. Therefore, we remand this case to the trial judge for a determination and award of a reasonable attorney fee for the services rendered by Hertzog in obtaining the insurance proceeds.

Reversed and remanded.