**LOCAL 58, INTERNATIONAL BROTH-ERHOOD OF ELECTRICAL WORK-ERS, AFL–CIO, Plaintiff,**

and

**Old Kent Bank, f/k/a First National Bank in Macomb County, Plaintiff,**

v.

**G.T. EINSTEIN ELECTRIC, INC., Defendant,**

and

**State of Michigan, Department of Treasury, Defendant.**

Civil Action No. 93–75009.

United States District Court, E.D. Michigan, Southern Division.

July 23, 1996.

Georgi–Ann A. Oshagan, Duane F. Ice, John G. Adam, Miller, Cohen, Southfield, MI, for Electrical Workers Local 58 Intl.

Tim G. Moore, Blomberg, Anderson, Mount Clemens, MI, for Old Kent Bank.

Louise–Annette Marcotty, Thomas A. Roach, Bodman, Longley, Ann Arbor, MI, for A.J. Etkin Constr. Co.

Laura J. Eisele, Dykema, Gossett, Detroit, MI, James M. Hacker, Mount Clemons, MI, for G.T. Einstein Elec.

## MEMORANDUM AND ORDER PARTIALLY GRANTING MOTION FOR RELEASE OF FUNDS

GADOLA, District Judge.

In this action, the State of Michigan, Local 58—International Brotherhood of Electrical Workers (hereinafter "Local 58"), Eugene Bolanowski, and James Hacker all are creditors of G.T. Einstein Electric, Inc. (hereinafter "Einstein") asserting claims to funds held by this court. Oral argument was heard on this matter on May 15, 1996. The various parties were then invited to submit supplemental papers, which have been received and reviewed. For the following reasons, this court holds that the funds shall go to the State of Michigan.

### I. Factual Background

On August 12, 1994, Local 58 obtained judgment against Einstein for $78,527.45. On March 3, 1995, Local 58 obtained writs of garnishment against Elkin Construction Co. (hereinafter "Elkin"), believing that it owed money to Einstein. Local 58 served the writ on March 7, 1995. Elkin responded that at the time of service of the writ, Elkin did not owe Einstein any money because Einstein had not completed its work for Elkin.

On March 14, 1995, the State of Michigan filed notice of a tax lien against Einstein for $16,905.18, arising from taxes due on October 31, 1994. On May 1, 1995, the State of Michigan filed notice of a second tax lien against Einstein for $7,945.82, arising from taxes due on March 2, 1995.

On June 15, 1995, Local 58 obtained a writ of garnishment against Barton & Barton (hereinafter "Barton"), believing that this firm owed money to Einstein. This writ was served on June 26, 1996. On June 28, 1995, Barton responded that at the time of service of the writ it did not owe any money to Einstein because it was involved with active litigation against Einstein.

On June 29, 1995, Local 58 served a second writ of garnishment against Elkin. (The writ was obtained on June 26, 1995.) On July 10, 1995, Elkin responded that Einstein still had not completed its work for Elkin and that Elkin did not owe any money to Einstein at the time of the second service. Some time after July 10, 1995, Einstein did finish its work for Elkin. Elkin paid $69,921.30 to the court pursuant to a court order issued July 28, 1995.

On September 5, 1995, the State of Michigan filed notice of a third tax lien against Einstein for $26,145.97, arising from taxes due on April 4, 1995.

On September 29, 1995, Local 58 served Barton with a second writ of garnishment. On October 4, 1995, Barton responded that at the time of the service of the second writ, it owed Einstein $25,364.62 pursuant to an arbitration award. The arbitrator, Mr. Bolanowski, is now claiming $1,600 of this award. Einstein's attorney, Mr. Hacker, is claiming $18,801.64 of this award. On October 30, 1995, a state court entered a judgment in favor of Einstein in the amount of the arbitration award. The judgment expressly included liens in favor of Mr. Hacker in the amount of $18,801.64 and Mr. Bolanowski in the amount of $1,600. On January 8, 1996, the full award of $25,364.62 was ordered to be paid to the court.

On February 2, 1996, with the consent of Einstein, the State of Michigan, and Local 58, the court paid Old Kent Bank $47,089.18 to pay off one of Einstein's debts. The money was ordered to be paid out of the $69,921.30 that Elkin paid to the court.

Currently, the State of Michigan, Local 58, Mr. Hacker, and Mr. Bolanowski are making claims to the money held by the court. The court currently has about $48,000.00 with which to pay these claims.

### II. Analysis

Einstein has moved to give the money the court is holding to the State of Michigan in payment of back taxes. Local 58 and Hacker and Bolanowski object. In order for this court to grant the motion, it would have to

hold that the State's tax liens are superior to (1) Local 58's liens, and (2) Hacker's and Bolanowski's liens.

■ Fed.R.Civ.P. 69 requires that this court use state procedures for ensuring the execution of its judgments. Therefore, state law will govern these motions.

M.C.L. § 205.29 provides, in part:

(1) Taxes administered under this act, together with interest and penalties on those taxes, shall be a lien in favor of the state against all property and rights of property, both real and personal, tangible and intangible, owned at the time the lien attaches, or afterwards acquired by any person liable for the tax, to secure the payment of the tax....

(2) The lien imposed by this act shall take precedence over all other liens and encumbrances, except bona fide liens recorded before the date the lien under this act is recorded. However, bona fide liens recorded before the date the lien under this act is recorded shall take precedence only to the extent of disbursements made under a financing arrangement before the forty-sixth day after the date of the tax lien recording, or before the person making the disbursements had actual knowledge of a tax lien recording under this act, whichever is earlier.

■ Thus, Michigan's tax liens are inferior to any recorded interests Local 58, Hacker, or Bolanowski obtained prior to the recording of the tax liens.

## A. Are the Tax Liens Superior to Local 58's Claims?

■ Local 58 argues that it has superior interests through its writs of garnishment. Writs of garnishment are controlled by M.C.L. § 600.4011, which provides, in part:

(1) ... [T]he court has power by garnishment to apply the following property or obligation, or both, to the satisfaction of a claim evidenced by contract, judgment of this state, or foreign judgment, whether or not the state has jurisdiction over the person against whom the claim is asserted:

....

(b) An *obligation owed* to the person against whom the claim is asserted if the obligor is subject to the judicial jurisdiction of the state.

(emphasis added). The Michigan Court Rules provide that a garnishee is liable for "all debts, whether or not due, *owing by the garnishee to the defendant when the writ is served on the garnishee....*" M.C.R. 3.101(G)(1)(d) (emphasis added). These statutes only apply to "obligations owed or payable at the time the writ is served." *Royal York of Plymouth Ass'n v. Coldwell Banker Schweitzer Real Estate Servs.*, 201 Mich.App. 301, 304, 506 N.W.2d 279 (1993) (citing *Erb–Kidder Co. v. Levy*, 262 Mich. 62, 64, 247 N.W. 107 (1933)).

[F]or a garnishment to be effective there must be an existing debt. Debts due in the future then refer to claims which are already fixed in amount or capable of being so fixed, and which do not depend for their validity or amount on anything to be done or earned in the future, or a continued liability which may be changed by events.

*Id.* at 306, 506 N.W.2d 279 (citation omitted).

Thus, one issue this court must decide is whether Local 58 served an effective writ of garnishment on either Elkin or Barton before the tax liens were recorded. This depends on whether Elkin or Barton owed a fixed amount to Einstein on the dates that Local 58 served its writs.

### 1. Local 58's Writs Against Elkin

Local 58 served writs of garnishment against Elkin on March 7, 1995 and June 29, 1995. Elkin responded to both of these writs with a disclosure providing that there was no debt owing at the time of service of the writs because Einstein had not completed its work for Elkin. Local 58 did not respond to these disclosures.

Michigan Court Rule 3.101(M)(2) provides, in pertinent part, that "[t]he facts stated in the disclosure must be accepted as true unless the plaintiff has served interrogatories or noticed a deposition within the time allowed by subrule (L)(1) or another party has filed a pleading or motion denying the accuracy of the disclosure." M.C.R. 3.101(L)(1)

requires the discovery to occur within 14 days of the disclosure. The Michigan Court of Appeals has ruled that a party who does not timely follow Rule 3.101(M)(2) may not attack the accuracy of a disclosure, and that a court must accept that disclosure as true. *Alyas v. Illinois Employers Ins. of Wausau,* 208 Mich.App. 324, 326–28, 527 N.W.2d 548 (1995).

■ The docket reflects that Local 58 failed to serve interrogatories or notices of depositions within 14 days of the disclosures filed by Elkin. Further, no other parties contested the accuracy of Elkin's disclosures within 14 days. Therefore, under M.C.R. 3.101(M)(2) and *Alyas,* this court must accept as true Elkin's statements that, at the time of the filing of the writs, Elkin owed no money to Einstein. Local 58's writs against Elkin were not effective.

■ Local 58 also argues that even if there were not a contractual obligation owed by Elkin to Einstein when the writs were served, Elkin had an equitable obligation to Einstein, that became subject to garnishment. The existence or amount of this type of equitable debt is not certain enough to be an "obligation owed" at the time the writs were filed, within the meaning of M.C.L. § 600.4011. *See Walker v. Paramount Eng'g Co.,* 353 F.2d 445 (6th Cir.1965) ("Although [defendant] may have been entitled to something for partial performance [of the contract], the amount was not fixed or determined. The amount claimed for partial performance could have been reduced or even wiped out if [defendant] had sued [garnishee] and the latter had counterclaimed for damages for breach of contract.") For the writ to be effective, the debt must be fixed at the date of service of the writ, although payment of the debt may be delayed past that date. *Id.* at 450 (citing *Erb–Kidder,* 262 Mich. 62, 247 N.W. 107 (1933)). Accordingly, Local 58 could not have gained a lien on any of the money given to the court by Elkin on the basis of any "equitable" debts.

■ In short, all three Michigan tax liens are superior to any writs of garnishment served by Local 58 against Elkin.

**2. Local 58's Writs Against Barton & Barton**

■ The state of Michigan recorded tax liens against Einstein on March 14, 1995 (for $16,905.18), May 1, 1995 (for $7,945.82) and September 5, 1995 (for $26,145.97). Local 58 served writs of garnishment upon Barton on June 26, 1995 and September 29, 1995. Thus, it is clear that the first two Michigan tax liens, totalling $24,851.00, have priority over Local 58's writs of garnishment because they were recorded before the writs were served. If effective, however, Local 58's first writ of garnishment would have priority over Michigan's third tax lien.[1]

■ On June 28, 1995 Barton responded to the writ with a disclosure providing that at the time of the service of the writ it did not owe any money to Einstein because it was involved in active litigation against Einstein. Local 58 took no action with respect to this disclosure. Further, no other party questioned the veracity of the disclosure. Therefore, under M.C.R. 3.101(M)(2) and *Alyas,* this court must assume that the disclosure was truthful. Local 58's first writ of garnishment was not effective. All three Michigan tax liens have priority over Local 58's writs against Barton.

**B. Are the Tax Liens Superior to Hacker's and Bolanowski's Liens?**

Mr. Hacker, who represented Einstein in its successful suit against Barton is making a claim for $18,801.64 of the $25,364.62 recovered in that suit. Mr. Bolanowski, who arbitrated the Einstein/Barton suit in August, 1995, is making a claim for $1,600 of the money recovered in that suit. When the court entered judgment for Einstein on October 30, 1995, based on the arbitrator's award, the court expressly granted Hacker a lien for $18,801.64 and Bolanowski a lien for $1,600. Messrs. Hacker and Bolanowski assert that

---

1. Local 58's second writ of garnishment, if effective, is junior to all three state tax liens because the second writ of garnishment was served on Barton after all three tax liens had been recorded.

their claims to the money paid to Einstein by Barton are superior to the state tax liens.

### 1. Mr. Bolanowski

■ Mr. Bolanowski asserts an equitable lien, tantamount to an attorney's charging lien on a judgment. Mr. Bolanowski presents no precedent, however, for extending the common law practice of recognizing attorney's liens to recognizing "arbitrator's liens." Without such precedent, this court is unwilling to recognize an equitable lien in favor of Mr. Bolanowski.

■ Mr. Bolanowski does, however, have an express right to $1,600, pursuant to the state court judgment. This claim, however, arose after all three state tax liens were recorded. Therefore, Mr. Bolanowski's claim to $1,600 is junior to all three tax liens. The state court judgment was also entered after Local 58 served its second writ of garnishment on Barton. Therefore, Mr. Bolanowski's claim for $1,600 is also junior to Local 58's second writ of garnishment.

### 2. Mr. Hacker

■ Mr. Hacker asserts an attorney's charging lien, which he believes is paramount to all other claims being made to the Barton funds. A charging lien is "an equitable right to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in that particular suit." *Kysor Indus. Corp. v. D.M. Liquidating Co.,* 11 Mich.App. 438, 444, 161 N.W.2d 452 (1968). Mr. Hacker has a charging lien on the funds in question from the date of the arbitrator's award in favor of Einstein.

■ A charging lien is subject to other liens that are perfected prior in time to the charging lien, however. *Warner v. Tarver,* 158 Mich.App. 593, 598–99, 405 N.W.2d 109 (1986). At common law, however, Hacker is at least entitled to recover a reasonable attorney's fee, taken on a pro rata basis from any senior creditors. *Warner,* 158 Mich.App. at 599–601, 405 N.W.2d 109. This is because without Hacker's efforts, Barton would not

have had any obligation to Einstein. Einstein's creditors were benefitted by Hacker's efforts.

The state of Michigan contends, however, that by state statute, its tax liens override this common law right to a reasonable attorney's fee. The relevant statute, M.C.L. § 205.29(2) provides, in part, that "[t]he lien imposed by this act shall take precedence over all other liens and encumbrances, except bona fide liens recorded before the date the lien under this act is recorded."

■ Under the plain language of this statute, the tax liens take precedence over Mr. Hacker's equitable right to recover a reasonable attorney's fee. *See Department of Treasury v. Campbell,* 107 Mich.App. 561, 568–69, 309 N.W.2d 668 (1981). The statute unambiguously provides that the tax liens take precedence over all other liens, except bona fide liens recorded before the date before the tax lien was recorded. In the present case, Mr. Hacker's equitable right to recover a reasonable attorney's fee was not a bona fide lien that was recorded before the tax liens were recorded. Therefore, this court is required by the Michigan Legislature to give priority to the state tax liens, in spite of the inequitable result such action effects with regard to Mr. Hacker.[2]

### C. Must the State Attempt to Recover Funds From Other Sources?

■ Local 58 argues that, even if Michigan's tax liens are superior to its writs of garnishment, Michigan should first exhaust all other avenues of recovery before depleting the court's fund, which would harm the junior creditors. As a matter of equity, a senior creditor should certainly recover its funds in such a way as to minimize harm to junior creditors. In *Slater v. Breese,* 36 Mich. 77 (1877), the court recognized the maxim of equity that "where one has a lien on two funds and another a later lien on one of them, the former is bound to exhaust the singly charged fund before resorting to that which is doubly charged." *Id.* at 92. The

---

**2.** Because satisfaction of the tax liens will entirely deplete the funds being held by the court, this court will not be able to provide any money to

Mr. Hacker. The State of Michigan's coffers will be enriched through Mr. Hacker's efforts, yet he will receive nothing.

court continued, "so long as the prior right is in no manner prejudiced, it should be exercised in the way most advantageous for later rights, and if the conditions supposed by it exist, it works beneficially for junior interests and without detriment to others." *Cf. In re Ann Arbor Brewing Co.,* 110 F.Supp. 111, 116 (E.D.Mich.1951) (applying maxim to the federal treasury department as a principle of federal law); *United States v. Paul,* 41 F.Supp. 41, 47–48 (E.D.Mich.1940) (same).

██ In the present case, however, the state has asserted that Einstein has no other property from which to recover its liens. There is no evidence in the record to suggest otherwise. Therefore, the state must take from the court's fund.

██ Local 58 also asserts that the tax liens should be recovered first from the individual officers of Einstein rather than from Einstein's money. As pointed out by the state, this argument must fail because it runs contrary to M.C.L. § 205.27a(5), which allows the state to recover from the officers of a company only if it cannot first recover from the company. Thus, the state must first recover whatever it can from Einstein before going after the officers of Einstein. *See Livingstone v. Department of Treasury,* 169 Mich.App. 209, 212, 426 N.W.2d 184 (1988).

### D. Conclusion

The tax liens by the state of Michigan are paramount. The funds currently held by the court will be paid to the State of Michigan. Einstein's motion to release the funds to the state will be granted.

### *ORDER*

Therefore, it is hereby **ORDERED** that G.T. Einstein Electric, Inc.'s motion to release funds to the State of Michigan be **GRANTED.** It is hereby further **ORDERED** that the funds belonging to G.T. Einstein Electric, Inc. being held by the court be paid to the State of Michigan in partial satisfaction of the State of Michigan's tax liens against G.T. Einstein.

**SO ORDERED.**