*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EDWARD LIGHT and RUBY LIGHT,

       Plaintiffs,

and

MCKEEN & ASSOCIATES, PC,

       Appellant,

v

HENRY FORD HEALTH SYSTEM and HENRY
FORD WYANDOTTE HOSPITAL,

       Defendants-Appellees,

and

TERENCE BREDEWEG, D.P.M., SOUTHGATE
FOOT AND ANKLE CENTER, PLLC, and
DANIEL ZAHARI, D.P.M.,

       Defendants.

UNPUBLISHED
April 2, 2019

No. 339832
Wayne Circuit Court
LC No. 15-002183-NH

Before: SHAPIRO, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

      In this medical malpractice action, appellant, McKeen & Associates, PC, appeals as of right an order for payment of settlement funds that directed defendants Daniel Zahari, D.P.M., and Southgate Foot and Ankle Center, PLLC, to tender a settlement payment, pursuant to a high-

low agreement, to plaintiffs Edward Light and Ruby Light.[1]  The order further directed that $86,307.55 from the settlement be disbursed to defendant Henry Ford Health System prior to any disbursements made to plaintiffs or appellant.  We affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

This case arises out of Edward Light's endoscopic tarsal tunnel release procedure that Dr. Zahari performed, assisted by defendant Terence Bredeweg, D.P.M.,[2] at defendant Henry Ford Wyandotte Hospital.  After the procedure, Edward presented to Dr. Zahari, who noted that Edward had a pseudo-aneurysm.  Dr. Zahari referred Edward to another doctor, who removed the pseudo-aneurysm and repaired Edward's posterior tibial artery.

Plaintiffs filed a medical malpractice suit against Dr. Zahari and Dr. Bredeweg, and argued that Southgate Foot and Ankle Center, PLLC ("Southgate"), was vicariously liable for Dr. Zahari's negligence, and that Henry Ford Health System and Henry Ford Wyandotte Hospital (collectively, the "Henry Ford defendants") were vicariously liable for Dr. Bredeweg's negligence.  Prior to trial, the parties participated in case evaluation, resulting in a proposed award to plaintiffs of $200,000 against Dr. Zahari and Southgate, and $550,000 against the Henry Ford defendants.  All parties rejected the case evaluation award.

During the course of the trial, plaintiffs entered into a high-low settlement agreement with Dr. Zahari and Southgate that capped damages at a low of $100,000 and a high of $250,000.  The jury found Dr. Zahari negligent and returned a verdict in favor of plaintiffs for $47,500.  However, pursuant to the high-low agreement,  these defendants were liable to plaintiffs for $100,000.  The jury also found that the Henry Ford defendants, through the actions of Dr. Bredeweg, were not negligent.  The trial court entered an order of judgment of no cause of action as to the Henry Ford defendants.  Because plaintiffs had rejected the case evaluation award of $550,000 with respect to the Henry Ford defendants, the trial court entered an order for case evaluation sanctions in favor of the Henry Ford defendants for $86,307.55.

Subsequently, appellant and Henry Ford disputed which party had priority to the $100,000 settlement amount.  Appellant argued that its contingency fee agreement with plaintiffs created an attorney's charging lien, which was superior to the Henry Ford defendants' case evaluation sanctions.  Contrariwise, the Henry Ford defendants argued that case evaluation sanctions took precedence over any disbursements based on a contingency fee agreement.  The trial court determined that, for the reasons set forth in this Court's decision in *Bennett v Weitz*, 220 Mich App 295; 559 NW2d 354 (1996), as well as on equity principles, Henry Ford's case evaluation sanctions had priority over appellant's charging lien.  Accordingly, the trial court entered an order from which appellant now appeals.

---

[1] The Lights, Dr. Zahari, and Southgate Foot and Ankle Center, PLLC, are not parties to this appeal.

[2] Dr. Bredeweg was dismissed from the case earlier in the proceedings and is not party to this appeal.

II. ANALYSIS

The parties agree that Henry Ford is entitled to case evaluation sanctions under MCR 2.403(O). Framing the issue as one of priority, appellant argues that its charging lien attached automatically to any proceeds from the high-low settlement agreement with Dr. Zahari and Southgate. Because plaintiffs entered into the high-low agreement with Dr. Zahari and Southgate before Henry Ford filed its "equitable lien" for case evaluation sanctions, appellant asserts that it has a superior claim to the $100,000 awarded plaintiffs pursuant to the agreement. We disagree.

The proper interpretation and application of a court rule are questions of law, which we review de novo. *Stenzel v Best Buy, Co, Inc*, 320 Mich App 262, 275; 906 NW2d 801 (2017). An attorney's charging lien is "an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *Id*. (quotation marks and citation omitted). *Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013). Charging liens "automatically attach to funds or a money judgment recovered through the attorney's services[,]" *George v Sandor M. Gelman, PC*, 201 Mich App 474, 477; 506 NW2d 583 (1993), and are superior to subsequent security interests in the same funds or money judgment, see *Warner v Tarver*, 158 Mich App 593, 598; 405 NW2d 109 (1986). Similarly, a security interest prior in time is superior to an attorney's charging lien. *Id*. However, none of the cases that address the relative priorities of charging liens and security interests compel the decision that appellant's charging lien in the case at bar takes precedence over an opposing party's right to case evaluation sanctions. The Court addressed this specific issue in *Bennett v Weitz*, 220 Mich App 295 (1996).

*Bennett* involved a medical malpractice action in which a mediation[3] panel issued an evaluation award of $7,500. Both sides rejected the award. The matter went to trial and the jury returned a $5,000 verdict for the plaintiffs (after adjustment, $5,787.40). However, because the judgment was more than ten percent below the mediation evaluation award, the defendants were entitled to mediation sanctions of $6,389.65, plus interest pursuant to MCR 2.403(O). *Id*. at 297. The plaintiffs moved in the district court for payment of their attorney's fees and costs from the judgment first, before applying the judgment to satisfy the mediation sanctions owed to the defendants. The district court granted the plaintiffs' motion to compel distribution of attorney fees and costs, but the circuit court reversed the district court's order, effectively denying distribution of the judgment proceeds to the plaintiffs without first deducting case evaluation sanctions. Subsequently, the plaintiffs appealed in this Court. *Id*.

This Court affirmed the circuit court's order. The Court observed that MCR 8.121 computed attorney fees on the "*net sum recovered after deducting from the amount recovered all disbursements properly chargeable to the enforcement of the claim* or prosecution of the action[.]' " *Id*. at 300 (emphasis in *Bennett*). The plaintiffs had secured a judgment through the services of their attorney, but they also owed mediation sanctions pursuant to MCR 2.403. Satisfying the mediation sanctions from the judgment left nothing to which an attorney's lien

---

[3] Amendments in 2000 replaced "mediation" as used in MR 2.403 with the term "case evaluation."

could attach. Implicit in the Court's reasoning is that the "net sum recovered" was the amount left over after applying the judgment to satisfy the mediation sanctions levied against the plaintiffs. Stated differently, the *Bennett* Court viewed mediation sanctions as "disbursements properly chargeable to the enforcement of [a] claim" that must be deducted from a judgment before distributing the "net sum recovered" to the plaintiffs.

The *Bennett* Court declined to apply the judgment to the fees and costs of the plaintiffs' attorneys before satisfying the mediation sanctions because it would burden defendants with having to attempt "to collect a larger amount of mediation sanctions from plaintiffs." *Id*. at 301. The Court also declined to apply the judgment to the fees and costs of the plaintiffs' attorneys first because it would be the equivalent of requiring the defendants "to pay the contingency fee of plaintiffs' counsel," contrary to the "American rule," which requires each side to bear its own litigation expenses in the absence of a specific exception. *Id*. at 302. Thus, *Bennett* stands for the proposition that case evaluation sanctions generally take precedence over an attorney's charging lien.[4] See also *Mahesh v Mills*, 237 Mich App 359, 364 n 3; 602 NW2d 618 (1999) (citing *Bennett* for the proposition that "[u]nlike a right of set off, an opposing party's claim to mediation sanctions takes precedence over an attorney's charging lien").

Appellant argues, however, that the principle derived from *Bennett* is not applicable in the case at bar because it involves multiple defendants, two of which settled with the plaintiffs by entering into a high-low agreement. Thus, the $100,000 at issue is a settlement, from which it is entitled to collect its costs and fee. For support, appellant relies on the following observations of the *Bennett* Court:

> [T]he action at bar is unlike cases with multiple defendants where one defendant has settled with the plaintiff, and then the verdict at trial is more favorable to another defendant, to whom the court later awards mediation sanctions. Under that circumstance, the plaintiff's counsel is entitled to collect his contingency fee from the settlement, which was separate and apart from the verdict. Moreover, in that instance another defendant had paid the settlement, which is not the situation here. [*Id*. at 298.]

Based on the foregoing quotation, appellant contends that it is entitled to collect its fee from the settlement and, because its common-law charging lien attached to the settlement proceeds prior to any lien for case evaluation sanctions asserted by the Henry Ford defendants, its claim has priority over that of the Henry Ford defendants. Appellant's argument is unavailing.

---

[4] Appellant seeks to distinguish *Bennett* by pointing out that *Bennett* involved a "negative recovery," whereas in the case at bar, appellant's charging lien attached to the proceeds of the high-low agreement. However, this argument assumes, rather than proves, that appellant's charging lien is not subject to case evaluation sanctions, contrary to this Court's holding in *Bennett*.

The reasoning of the *Bennet* Court upon which appellant relies for support of its position is non-binding obiter dictum. See *Kasberg v Ypsilanti Twp*, 287 Mich App 563, 573; 792 NW2d 1 (2010) ("Statements contained in an opinion that pertain to law not essential to a determination of the case are dicta and do not have the force of an adjudication."). Nevertheless, the Court observed correctly that there are instances in which attorneys are entitled to take their fee from settlement proceeds that, as is the case here, are less favorable than the case evaluation award but are exempt from application of the case evaluation sanctions rule. If a party rejects the case evaluation award, but then settles the dispute prior to trial for less than the case evaluation, the party is not subject to costs under MCR 2.403. *Webb v Holzheuer*, 259 Mich App 389, 392; 674 NW2d 395 (2003). To require a party settling under such circumstances to pay the opposing party's costs would "force [parties] to eschew any settlement offer between case evaluation and the jury's verdict that does not significantly improve on the case evaluation award. This would prove counterproductive to the purpose of the rule." *Id*. "In general, the purpose of the case evaluation rule is to expedite and simplify the final settlement of cases to avoid a trial." *Magdich & Assoc, PC*, 305 Mich App 272, 276; 851 NW2d 585 (2014), quoting *Larson v Auto-Owners Ins Co*, 194 Mich App 329, 332; 486 NW2d 128 (1992). Because pre-trial settlements, even if they are for less than the case evaluation award, fulfill the purpose of the case evaluation rule, they are not subject to the case evaluation sanctions rule. *Webb*, 259 Mich App at 392. Stated differently, where pre-trial settlements fulfill the general purposes of the case evaluation rule, case evaluation sanctions do not take precedence over the attorney's charging lien with respect to the settlement proceeds.

The high-low agreement that plaintiffs entered into with Dr. Zahari and Southgate is not the equivalent of a pre-trial settlement; it does not fulfill the purpose of the case evaluation rule and, therefore, is not exempt from operation of the case evaluation sanctions rule, MCR 2.403(O). The high-low agreement was a protective measure designed to provide the parties to the agreement some comfort during jury deliberations by avoiding the risks of an all-or-nothing verdict. Although the high-low agreement facilitated the final computation of damages, see *Magdich & Assoc, PC*, 305 Mich App at 276, it did not expedite a final settlement, deter protracted litigation, or avoid a trial. In addition, the high-low agreement arguably was not "separate and apart from the verdict." *Bennett*, 220 Mich App at 298. In fact, a verdict was necessary to determine the liability of Dr. Zahari and Southgate under the high-low agreement. To conclude that entering into a high-low agreement during the course of a trial insulated the settlement amount from an opposing party's right to case evaluation sanctions is contrary to the purpose of the case evaluation sanctions rule.

In short, appellant has failed to show that the high-low settlement agreement somehow exempts the $100,000 plaintiffs obtained from the high-low agreement from operation of the case evaluation sanctions rule or renders appellant's charging lien superior to case evaluation sanctions incurred through the litigation. Appellant has provided no persuasive authority in support of its proposition that, under the facts of this case, it is entitled to deduct its costs and fee from the high-low settlement amount before any remaining amount is applied to the Henry Ford defendants' case evaluation sanctions. Because the high-low settlement agreement was not a settlement separate and apart from the verdict that served the purposes of the case evaluation rule, it was subject to the case evaluation sanctions rule as set forth in *Bennett*. Pursuant to *Bennett*, appellant's charging lien attached to plaintiffs' "*net sum recovered after deducting from the amount recovered all disbursements properly chargeable to the enforcement of the claim* or

-5-

prosecution of the action[.]' " Accordingly, the trial court did not err in using the $100,000 to satisfy the case evaluation sanctions plaintiffs owed to the Henry Ford defendants first, before distributing the "net recovery" to plaintiffs and appellant. Nor did the trial court err in declining to impose the burden on the Henry Ford defendants to collect case evaluation sanctions from plaintiffs. *Bennett*, 220 Mich App at 301-302.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Jane M. Beckering
/s/ Michael J. Kelly